BYRAM TOWNSHIP, A MUNICIPAL CORPORATION, PLAIN-TIFF–RESPONDENT, v. WESTERN WORLD, INC., AND CHEYENNE CORPORATION, DEFENDANTS–APPELLANTS.

Argued November 9, 1987—Decided August 1, 1988.

*Richard M. Conley* argued the cause for appellants (*Herold and Haines,* attorneys).

*Kevin D. Kelly* argued the cause for respondent (*Kelly, Gaus, Holub & Reed,* attorneys).

The opinion of the Court was delivered by

HANDLER, Justice.

Defendant taxpayers, Western World, Inc., and Cheyenne Corporation, applied to the Byram Township tax assessor for farmland assessment for several contiguous wooded parcels for the tax year 1983. The assessor denied farmland assessment for all the parcels, and the taxpayers appealed to the Sussex County Board of Taxation. The County Board granted farmland assessment. The Township then filed complaints with the New Jersey Tax Court seeking a reversal of these assessments. The Tax Court entered judgments denying farmland assessment with regard to all the properties on the grounds that the taxpayers' use of their property for the production and sale of trees and forest products was a prohibited use under the Township's zoning ordinance.

Defendants then appealed to the Appellate Division, which affirmed the Tax Court judgments in an unreported opinion. Appellants filed a notice of appeal to this Court pursuant to *Rule* 2:2–1(a)(1), claiming that the case involves a substantial question arising under the New Jersey Constitution.

I.

The taxpayers are related corporations. The property involved in this proceeding owned by the Cheyenne Corporation consists of approximately ninety-four-and-a-half acres. Of that total acreage, nineteen acres have been developed and operated as a family amusement park with an 1880's western theme called "Wild West City." The tax status of the amusement park site, which is not assessed as farmlands, is not an issue in this proceeding; the farmlands tax status of the balance of the tract, some seventy-five-and-a-half acres of woodlands, is in dispute. The rest of the property at issue in this appeal

consists of slightly more than forty-eight-and-a-half acres of woodland owned by defendant Western World, Inc. Three contiguous small landlocked parcels owned by Cheyenne Corporation are no longer included in the appeal.

Much of the evidence adduced at trial related to the ownership and use of these properties. Michael Stabile, Sr., a principal in both Western World, Inc. and Cheyenne Corporation, testified that Cheyenne Corporation bought the largest tract (Block 314, Lot 17) in 1964 and Western World, Inc. bought the remaining tract (Block 365, Lot 5) in 1980. The seventy-five-acre portion of Lot 17 not devoted to Wild West City activities was heavily wooded, with only two clearings; the cutting of trees on this property has occurred since the early 1970s. Cheyenne Corporation also planted 1,500 Christmas trees on a clearing in this property in accordance with a forester's recommendations. Hay is grown on another four or five acres for the horses used in connection with the operation of Wild West City. Most of the wood cut from Lot 17 has been used for firewood. Other wood taken from the property was sent to a saw mill and cut into lumber for use in the construction and repair of horse stalls and for decking for floors and porches at the Wild West City park. Stabile stated that he had engaged in cleaning up the woodland, cutting trees and selling cord wood. He also had a professional forester survey the property and prepare a map with recommendations for the use of the property for woodland purposes. Stabile further testified that he was encouraged in these efforts by the local tax assessor, both in writing and orally, and was told by the assessor that if he continued with what was being done to the Cheyenne Corporation property it would eventually obtain farmland assessment.

With respect to the property owned by Western World, Inc., Lot 5, Stabile testified that it is entirely wooded. According to his testimony, the former owner sold logs from the property. Woodland harvesting on that property was continued by the current owner under the supervision of several foresters, one of whose plans was introduced into evidence.

The testimony of Michael Stabile, Sr., was both corroborated and augmented by that of his son, Michael Stabile, Jr. The latter testified that the former operation had consisted of logging and the harvesting of trees, including black walnut and other valuable veneer trees. The forest products taken from Lot 17 and Lot 5 consisted of cord wood for firewood as well as planks, 4 × 4s and larger timbers. He also stated that the woodland management on the Cheyenne Corporation property, Lot 17, had been ongoing since the Stabiles acquired the property in 1964. The woodland management program implemented on the subject properties was described as the "selection method" of forest management, which consisted of the removal of competitive trees of an inferior species, diseased trees, trees that might be susceptible to disease, and deformed trees. In their woodland management operations, the taxpayers do not use big logging equipment. They use chain saws, a small tractor, and a small pick-up truck; they have a bulldozer available to them for hauling out larger logs, but they do not have logging equipment such as skidders and winches. Taxpayers stress that this woodlands harvesting activity, dating back to the prior owners of the property, was never challenged by the Township until they sought farmlands assessment of the property.

The Township produced as its witness Ronald A. Bartoo, a private forestry consultant, who had inspected the subject properties. Bartoo testified that he found no evidence of the use of logging machinery or tractors on the subject properties. This witness indicated that his inspection showed a "very meticulous, careful removal of individual trees" from the subject properties. Bartoo testified also that "the forest is really a very nice one", with "potential for very good timber production." However, Bartoo did not think the woodland had been managed intensively enough, which he conceded would not necessarily result in "a thing of beauty." The Township's witness also characterized the taxpayers' efforts as "commendable" and "fine," but stated that they were "not taking advan-

tage of the productive capacity of the forest." He said the taxpayer seemed to be "more concerned about kind of a park-like forest...." Bartoo also stated that he was "not particularly concerned about the aesthetics" because "[w]hat we're after is to put this thing to work and make it produce." In answers to questions by the court, Bartoo stated that the subject property was "a beautiful woodland" and that it was "suitable for the production of forest products."

Byram Township also called its tax assessor as a witness. The assessor stated that he did not know what the zoning ordinances were in Byram Township before 1978. He also stated that no zoning official of Byram Township had ever issued a stop order against either of the defendants for their woodlands management operations on the subject properties.

## II.

Taxpayers claim their entitlement to farmland assessment under Article VIII, Section 1, paragraph 1(b) of the New Jersey Constitution. This provides:

> The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural or horticultural use and to have been so devoted for at least the 2 successive years immediately preceding the tax year in issue, shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural use.

This provision was added as an amendment to the Constitution's Tax Clause in 1963. It carves out the sole exception to the constitutional insistence that real property in New Jersey be assessed for local property tax purposes at the same standard of value throughout each taxing district. *N.J. Const.* of 1947, art. VIII, sec. 1, para. 1(a).

The constitutional amendment was adopted following the decision of this Court in *Switz v. Kingsley*, 37 *N.J.* 566 (1962). The Court there considered the constitutionality of a statute that afforded favorable tax treatment to farm lands. This statute provided in part that in the assessment of acreage

actively devoted to agricultural use, the assessed value of the land "shall not be deemed to include prospective value for subdivisions or nonagricultural use." *L.* 1960, *c.* 51, sec. 23. We held the provision to be "plainly invalid" because of the uniformity requirement of the Tax Clause. 37 *N.J.* at 585.

This decision rekindled efforts to secure tax relief to New Jersey farmers and to encourage state agriculture, which are recounted in *East Orange v. Livingston Township,* 102 *N.J.Super.* 512 (Law Div.1968), aff'd, 54 *N.J.* 96 (1969). New Jersey's Commission on State Tax Policy had noted in January 1963 the "adverse effects of the mounting property tax burden on the farmers of New Jersey [and the] view that if agriculture is to survive in New Jersey the property tax burden on farmlands must be eased." *Id.* at 532. A special citizens' Farmland Assessment Committee was appointed by Governor Richard J. Hughes to study and develop recommendations with respect to the assessment of farmland in New Jersey for local property tax purposes. In its report, the Governor's Farmland Assessment Committee considered these objectives: "(a) the desirability of continuing the family farm in New Jersey and the farmer's problems; (b) the interests of the municipalities and the problems of the assessors; and, finally, (c) the interests of all the people of New Jersey in maintaining 'open' space, the beauty of our countryside and in the availability of agricultural products fresh from the farm." *Id.* at 532–33.

These efforts eventuated in the amendment of the Tax Clause to permit eligible property to be assessed as "farmland." The objective of the constitutional amendment was to enable and encourage farmers to continue to farm their land in the face of dwindling farm incomes and mounting costs, "not the least of which was sharply increasing real estate taxes." *Id.* at 534. The public policy behind the special treatment of farmland for tax purposes was clearly articulated to be an effort to slow the transition in New Jersey from open and undeveloped land to developed land. *Id.* The proposed amendment sought to foster agriculture in the State for the good of the general economy,

ameliorate problems of urban growth in rural municipalities, and encourage the preservation of open spaces. *Id; see also Centex Homes of New Jersey, Inc. v. Manalapan Township,* 4 *N.J. Tax* 599, 605–07 (Tax Ct. 1982), certif. vacated, 95 *N.J.* 218 (1983) (same); *Jackson Township v. Paolin,* 181 *N.J.Super.* 293, 305, 3 *N.J. Tax* 39, 51 (Tax Ct. 1981) (same).

Following adoption of this amendment to the Tax Clause of the State Constitution, the Legislature enacted the Farmland Assessment Act of 1964, *N.J.S.A.* 54:4–23.1 to 23.23.

*N.J.S.A.* 54:4–23.2 states that

[f]or general property tax purposes, the value of land, not less than 5 acres in area, which is actively devoted to agricultural or horticultural use and which has been so devoted for at least the 2 successive years immediately preceding the tax year in issue, shall, on application of the owner, and approval thereof as hereinafter provided, be that value which such land has for agricultural or horticultural use.

*N.J.S.A.* 54:4–23.3 defines land that is in agricultural use:

Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to ... trees and forest products....

The court in *Livingston v. East Orange, supra,* had occasion to review and interpret the Farmland Assessment Act. It stressed that the critical fact in determining the eligibility of property for farmland assessment was whether the actual use of the property was for an agricultural purpose as delineated by the statute. 102 *N.J.Super.* at 536. *See also Centex Homes of New Jersey, Inc. v. Manalapan Township, supra,* 4 *N.J. Tax* at 614 (the test used to determine eligibility for farmland assessment "is not contemplated future use; rather, the constitutional provision speaks in terms of current or present function."); *Urban Farms, Inc. v. Township of Wayne, supra,* 159 *N.J.Super.* 61, 67 (App.Div.1978); *Township of Andover v. Kymer,* 140 *N.J.Super.* 399, 403 (App.Div.1976); *N.J. Turnpike Auth. v. Township of Washington,* 137 *N.J.Super.* 543 (App. Div.1975), aff'd o.b., 73 *N.J.* 180 (1977). The Court in *East Orange* also recognized that if property is subject to mixed uses, that is, more than one use, then the dominant use would

determine its status for tax purposes and its eligibility for farmland assessment. 102 *N.J.Super.* at 537.

In this case, there does not appear to be any material dispute over the actual use of the property. Consistent with the testimony, the Tax Court, in its unreported opinion, found:

Since the late 1970's, taxpayer has consulted with several state foresters and has had woodlot management plans prepared for Lots 5 and 17. Taxpayer uses a selective cutting rather than a clear-cutting method of harvesting trees. Improvement and salvage cutting of trees was done in several areas of the property, moving from front to rear, with logging trails being cut as the work progressed. Black walnut and oak trees were sold as veneer trees, but some were cut at a saw mill into planks and parts to be used in construction work at Wild West City. Some wood was given away in exchange for help in wood cutting. Most of the wood cut was sold for firewood.

Moreover, there does not appear to be any evidence indicating mixed uses. The factual findings establish that the actual and only use of the subject property was as managed woodland. These findings fit clearly within the provisions of the Farmland Assessment Act defining property eligible for farmland assessment: property "when devoted to the production for sale of ... trees and forest products" that are "useful to man" shall be deemed to be "in agricultural use." *N.J.S.A.* 54:4–23.3. Moreover, the Township stipulated that the other requirements of the Farmland Assessment Act *N.J.S.A.* 54:4–23.5, relating to acreage and the amount of income derived from the use of the property, had been met. Consequently, based on the facts adduced at trial in this case, the defendants' properties clearly qualified for farmlands assessment for the tax year 1983.

The Tax Court, however, denied the farmlands assessment because the taxpayers' use of their property for the production and sale of trees and forest products was a prohibited use under the Byram Township zoning ordinance. The Tax Court believed that the use of this property as a "managed woodlands" was "illegal." Because the record before the Tax Court was plainly insufficient to establish that the taxpayers' current use of the property violates the zoning ordinance, and further, that the Township had the burden of proving the ineligibility of

the property based on zoning nonconformity, we reverse the judgment of the Appellate Division below and reinstate the County Board's assessment of taxpayer's property for the 1983 tax year.

■ The sole basis for the Tax Court's conclusion[1] that agricultural uses were prohibited on taxpayers' property was the fact that farm use was not an explicitly permitted use for Lot 17, zoned F-P (Family theme recreation park), or Lot 5, zoned B-2 (shopping center and conditional commercial use). The court justified this conclusion by observing that

> [t]he fact that farming is an expressly permitted use in the R-1 zone, coupled with the fact that farming is not included in the permissible uses in any other zone and that the zoning ordinance states that no land may be used for a purpose other than the permitted use, establishes that the township intentionally restricted farming to the R-1 zone.

In our opinion, the record was insufficient to enable the Tax Court to determine facts necessary for its conclusion or, indeed, to reach the conclusion of a zoning illegality as a matter of law. Both the nature and level of agricultural activity necessary to qualify for farmland assessment and the Township's zoning ordinance are fact-sensitive matters. It would be improper automatically to equate the statutory term "actively devoted to agricultural or horticultural use" within the meaning of the Farmland Assessment Act with the generic term "farming" as used, expressly or impliedly, in a municipality's zoning ordinance. Under the Act, land is deemed actively devoted to agricultural or horticultural use as long as its dominant use is one of those enumerated in *N.J.S.A.* 54:4-23.3, *see East Orange, supra,* 102 *N.J.Super.* at 537, and for the past two years the income from sales of such products have averaged at least $500 a year for the first five acres, and an additional $0.50 per

---

[1]In its opinion, the Appellate Division indicated that taxpayers had conceded that their use of the property in question for woodlands was prohibited by the Township's zoning ordinance. The taxpayers disclaim such a concession.

acre of woodlands.[2]  *N.J.S.A.* 54:4–23.5.  It is thus possible for a relatively low level of "agricultural" activity encompassing things not typically regarded as conventional farming, *i.e.,* managing woodlands, to satisfy the statutory definition.  On the other hand, it is not at all obvious that uses that might satisfy the minimal requirements of the Farmland Assessment Act would *per se* constitute agricultural or farming uses for zoning or other local land use purposes or, conversely, would *per se* not constitute other kinds of uses, such as residential, recreational, open-space, etc., that might be permitted by the local ordinances or regulations.

The record here strongly suggests only a minimal level of agricultural activity.  The Township's own expert testified that petitioners were "not taking advantage of the productive capacity of the forest," and seemed to be "more concerned about a kind of park-like forest...."  Unlike the cases relied upon by the Tax Court, such as *Clearview Estates, Inc. v. Borough of Mountain Lakes,* 188 *N.J.Super.* 99, 105 (App.Div.1982); *Borough of Kinnelon v. South Gate Associates,* 172 *N.J.Super.* 216, 218 (App.Div.), certif. denied *sub nom. Borough of Kinnelon v. Smoke Rise of Kinnelon,* 85 *N.J.* 94 (1980); and *L & Z Realty Co., Inc. v. Borough of Ringwood,* 6 *N.J. Tax* 450, 451 (Tax Ct. 1984), which involved commercial logging operations, there is no evidence that the minimal activity disclosed on the record in this case in any way rises to the level of "commercial" activity.  In fact, taxpayers selective improvement and salvage cutting of trees might even be consistent with open-space zoning of the property.  *See N.J.S.A.* 40:55D–5 (defining open-space).

The Tax Court's denial of farmland assessment was thus based on an untested assumption concerning the intensity of

---

[2]In 1986, subsequent to the events of this appeal, the Act was amended to impose stricter requirements for woodlands farmland assessment.  *See L.* 1986, *c.* 201; *N.J.S.A.* 54:4–23.3.  These new requirements are not at issue in this appeal.

activity required to satisfy the Act. While the inadequate record developed below precludes our resolution of the question, taxpayers have advanced tenable arguments that their woodlands management activities are permissible under the Township's zoning laws. For example, with respect to Lot 17, certain kinds of accessory uses are permitted in the F–P zone, *see* Byram Township Zoning Ordinance, §§ 17–5, 17.11.10, and it is possible that maintenance of woodlands would be a reasonable accessory use of property surrounding an amusement park seeking to simulate an 1880s "wild west" atmosphere.[3] *See also State v. P.T. & L. Const. Co. Inc.*, 77 *N.J.* 20, 27–28 (1978) (defining accessory use). Similarly, with respect to Lot 5, located in a B–2 zone, in which shopping centers alone are permitted as of right, and all other uses are conditional uses, it would appear to be an untoward result to require taxpayers to go through the conditional-use process to allow them to maintain their property in what essentially amounts to an undeveloped state. Even if it could be argued that taxpayers were required to obtain conditional-use approval, *see N.J.S.A.* 40:55D–67, for the activities at issue here, it is possible they would satisfy the Township's accessory use criteria for a B–2 zone, in which limited commercial uses are permitted as long as they do not result in air or noise pollution outside the boundaries of the site occupied by such use, or involve the slaughter-

---

[3]The Tax Court also denied farmland assessment to Lot 17 on the grounds that the Township's limitation of F–P zoning to tracts over eighty acres required that eighty acres of Lot 17 be deemed to be devoted to amusement park use, thus precluding assessment of the property as farmland. We note, without resolving the issue, that this interpretation appears to be inconsistent with *Terhune v. Township of Franklin*, 107 *N.J.Super.* 218, 221 (App.Div.1969), which held that the actual use of the property, rather than a municipality's minimum lot size requirements for an adjoining nonagricultural use, controlled its eligibility for farmland assessment. We note further that *Green Pond Corp. v. Rockaway Township*, 2 *N.J. Tax* 273, 286, 290–91 (Tax Ct. 1981), aff'd in part, appeal dismissed in part, 4 *N.J. Tax* 534 (App.Div.1982), relied on in part by the Tax Court, is distinguishable, since in that case the taxpayer failed to show that agricultural activity was the dominant use of any particular part of a large tract of land subject to various uses.

ing of poultry or animals. Byram Township Zoning Ordinance § 17–11.5. These are only some of the issues that might be exposed if the zoning status of the property was contested and properly presented for adjudication. In light of the fact that the Tax Court never made such inquiries, its determination that taxpayers' activities violated the zoning ordinance and thus denied their property farmland assessment was made on the basis of an inadequate record and cannot stand.

Thus the issues of whether the actual current use of the properties, regardless of label, are permitted as such, or accessory in nature, or indeed are valid non-conforming uses, are fact-intensive. The complexities suggested by these various considerations lend some force to appellants' contention that the Township has never taken any action under its zoning laws to declare that the property is being used unlawfully or to enjoin its use. The absence of any antecedent adjudication of illegality renders the Tax Court's determination even more problematic.

The question remains whether a proper disposition of this case in light of the insufficiency of the record below would be to reverse and uphold the assessment of the County Board, which granted farmland assessment, or to remand to the Tax Court to permit issues to be properly joined and presented concerning the status of the property under the Township's zoning ordinance and its effect on assessment eligibility. In addition, a finding that such activities are prohibited by the zoning ordinance would necessarily entail the further inquiry of whether an ordinance prohibiting such low intensity agricultural activity is a permissible exercise of the Township's powers under the Municipal Land Use Law. *N.J.S.A.* 40:55D–1 to 112. In light of the procedural posture of this case, we find that the proper course of action is to uphold the County Board's assessment of the property tax for the 1983 tax year.

■ There are two reasons for doing so. First, this case came to the Tax Court as an appeal by the Township from the

County Board, which had granted taxpayers farmland assessment. While a municipality's original assessment is entitled to a presumption of validity, this presumption attaches to the assessment of the County Board when it is the determination of that body that is challenged before the Tax Court. *See, e.g., Borough of Califon v. Stonegate Properties, Inc.,* 2 *N.J. Tax* 153, 162 (Tax Ct. 1981) (recognizing presumption of validity of county board determination of entitlement of property to farmland assessment following municipal assessor's denial of such treatment to taxpayer's property). The Tax Court thus should not have upset the County Board's determination until Byram Township had adduced sufficient competent evidence, "definite, positive, and certain in quality and quantity to overcome the presumption." *Aetna Life Ins. Co. v. Newark,* 10 *N.J.* 99, 105 (1952). Since we find today that the Township failed to meet this burden, the County Board assessment remains in place. We note, however, that our ruling today does not prevent the municipality from attempting to make a sufficient showing in later tax years, *see, e.g., Samuel Hird & Sons, Inc. v. City of Garfield,* 87 *N.J.Super.* 65, 75 (App.Div.1965) (tax assessment has no *res judicata* effect on subsequent assessments), although we would anticipate that to the extent the Township seeks to deny farmland assessment because of zoning violations, such violations would ordinarily be established in separate antecedent actions before appropriate tribunals, *see, e.g., State v. P.T. & L. Constr. Co., supra,* 77 *N.J.* at 31 ("since a charge of violation of a zoning ordinance is penal in nature, conviction should not be had where the terms of the ordinance do not clearly prohibit the complained of conduct.").

In addition, we note that even absent the presumption in favor of the County Board, the Township still would have the burden of proving the illegality of taxpayers' use. The Tax Court below assumed that the taxpayer had to prove the legality of their activities in order to qualify for farmland assessment, a misapprehension shared by other courts that have confronted this issue. *See, e.g., Clearview, supra,* 188

*N.J.Super.* at 105. Nothing in the Act requires the taxpayer affirmatively to prove the legality of the use of the property; it merely provides that on establishing the prerequisites of actual use for a sufficient period of time, resulting in a sufficient average income from agricultural activities, the property is entitled to farmland assessment. *N.J.S.A.* 54:4–23.2, 23.5. The focus of the statute is exclusively on the actual use of the property. *See, e.g., East Orange, supra,* 102 *N.J.Super.* at 537; *Centrex Homes of New Jersey Inc. v. Manalapan Township, supra,* 4 *N.J. Tax* at 614. While this focus does not preempt a legitimate exercise by a municipality of its zoning power to prohibit such activity, this fact does not elevate the legality of the use to an element of the Act.

■ The burden of proving illegality of use and its impact on the tax status of property thus is properly placed on Byram Township. *See, e.g., State v. P.T. & L. Const. Co.,* 77 *N.J.* at 31. The Township's legitimate interest in this proceeding is limited to preventing prohibited uses, not preventing the assessment of property as farmland. *See, e.g., White v. Borough of Bernardsville,* 9 *N.J. Tax* 110, 117 (Tax Ct. 1986) (property occupied by structure devoted to agricultural use constructed in violation of set-back requirement still entitled to farmland assessment), aff'd, 9 *N.J. Tax* 122 (App.Div.1987); *Terhune, supra,* 107 *N.J.Super.* at 222 (land needed to satisfy minimum lot size residential zoning ordinance but actually used for agricultural purposes entitled to be assessed as farmland). *Mt. Hope Mining Co. v. Township of Rockaway,* 8 *N.J. Tax* 570, 579–83 (Tax Ct. 1986) (failure to obtain tree removal permit not sufficient grounds to deny farmland assessment). On the record below, the Township has failed to make an adequate showing that its zoning laws prohibit taxpayers' current use of their property and the Tax Court's reliance on this ground was misplaced. Accordingly, taxpayers were entitled to assessment of their property as farmland.

## III.

We are satisfied on this record that the Farmland Assessment Act requires that farmland assessment be granted to property actively devoted to agricultural or horticultural activity as statutorily defined in the absence of any proper adjudication that the use of such property is itself unlawful. In this case, it is indisputable that the actual use of the properties satisfies the standards of the Farmland Assessment Act defining agricultural use sufficient to gain the assessment of the property as "farmland." Moreover, it has not been established or properly adjudicated in this case that such a use of the property violates the local zoning ordinance, or any other local restrictions affecting land use, or is in any sense unlawful or illegal.

Accordingly, we determine that the taxpayers' properties are entitled to farmland assessment for the tax year in question. The judgment below is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, O'HERN, GARIBALDI, STEIN and HANDLER—6.

*Opposed*—None.