PER CURIAM.
This is an appeal by the Township of Byram (Byram) from a judgment entered by the Tax Court on October 14, 1992, which *155 granted farmland assessments to plaintiffs for the years 1986 through 1989 and for Western World, Inc. (Western), for the additional year of 1985.
This case has a long procedural history. See Byram Tp. v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988). The plaintiffs-taxpayers are related corporations. Plaintiff Cheyenne Corporation (Cheyenne) owns 75.5 acres of woodland described as Block 314, Lot 17 in Byram Township. Id. at 224, 544 A2d 37. Western owns 48.6 acres of woodland, adjacent to Cheyenne’s property, described as Block 365, Lot 5 in Byram. Id. at 225, 544 A.2d 37. Cheyenne and Western initially sought farmland assessments pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to 23.23, for the tax year 1983. Id. at 224, 544 A.2d 37. Byram’s tax assessor denied the applications, but the Sussex County Board of Taxation reversed and granted the applications. The Tax Court" denied the applications on the grounds that Cheyenne and Western used their property for the production and sale of trees and forest products which were prohibited by By-ram’s zoning Ordinance. Id. at 224, 230, 544 A.2d 37. The Appellate Division affirmed in an unpublished opinion.
■ The Supreme Court reversed and granted farmland assessments for 1983. Id. at 237, 544 A2d 37. The Court held that the County Board’s determination was entitled to a presumption of validity and that Byram had the burden to overcome that presumption which it had failed to establish. Id. at 235, 544 A 2d 37. Additionally, the Court determined that Byram had the burden of proving that plaintiffs’ use of the land for the production and sale of trees and forest products violated the local zoning ordinance. Ibid. In other words, the taxpayers did not have to prove the legality of their activities in order to qualify for a farmland assessment. Rather, the taxing district had to prove the “illegality of use and its impact on the tax status of property.” Id. at 236, 544 A2d 37.
While the farmland assessment applications for 1983 were winding their way through the appellate process, plaintiffs’ applications for a similar assessment for 1984 were approved by Byram. *156 However, Byram denied applications for 1985, 1986, 1987, 1988 and 1989 tax years.
The Tax Court conducted a consolidated trial on October 18, 1989. There was an appeal to the Appellate Division which reversed a portion of the Tax Court’s decision that is not pertinent to our decision. On remand from the Appellate Division, the hearing was continued on October 4, 1991. In a written decision dated June 12, 1992, Judge Crabtree concluded that Byram had failed to establish that the woodland maintenance and timber harvesting activities by plaintiffs-taxpayers were illegal. The Tax Court also found that the sale of wood, harvested from cutting trees and the use of five cords of wood by each plaintiff to heat a maintenance shop for each tax year involved should be considered in determining whether the minimum gross sale had been satisfied. The average annual gross sale requirement was determined to be $521.80 for Cheyenne and $535.77 for Western.
The maintenance shop was used to maintain and repair equipment used for timber harvesting and woodland maintenance. Each plaintiff burned five cords of wood, valued at $115 per cord. That value was added to the value of wood sold from trees harvested from the land. Those computations revealed that plaintiffs satisfied the gross annual sales requirement of N.J.SA 54:4-23.5 for each tax year involved except for 1985, when Cheyenne failed to qualify. Judgment was entered accordingly.
We now affirm the judgment under review substantially for the reasons expressed by Judge Crabtree in his written opinion dated June 12, 1992. We add a few comments, however. N.J.AC. 18:15-6.3 permits consideration of crops grown for on-farm use at the retad sales value in determining whether the average gross annual sales requirement of N.J.SA 54:4-23.5 has been established. We are entirely satisfied that this regulation applies to plaintiffs’ low level of “agricultural” activity involved even though they were not engaged in conventional farming. See Byram Tp., supra, 111 N.J. at 231-32, 544 A.2d 37.
Finally, we agree with the Tax Court that the evidence in the present record respecting whether the woodland maintenance *157 and timbering operations violated Byram’s zoning ordinance is “no stronger than the proofs submitted to the Tax Court in the case ultimately decided by the Supreme Court.” Mere proof of what uses were permitted under the zoning ordinance and proof of the uses made of the property by plaintiffs, are insufficient to establish illegality. Byram Tp., supra, 111 N.J. at 231-34, 544 A.2d 37. The Supreme Court observed, as to Lot 17, that “the cutting of trees on this property has occurred since the early 1970s.” Byram Tp., supra, 111 N.J. at 225, 544 A.2d 37. Mr. Cox informed us during oral argument that he was unable to testify otherwise. The fact that Byram took no action for such a long period to correct what it alleges to be illegal activities supports the presumption of legality. We are therefore persuaded that Byram failed to present sufficient competent evidence, “definite, positive and certain in qualify and quantity to overcome the presumption” of legality. Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952); Byram Tp., supra, 111 N.J. at 235, 544 A.2d 37.
The judgment under review is affirmed.