AXELRAD, J.T.C.
This local property tax appeal involves Block 1160.02, Lots 7 & 8, in the Township of Lakewood, Ocean County, consisting of two contiguous lots totaling 30.7 acres. The subject parcels are located at 1100 Towbin Avenue, at the intersection of New Hampshire Avenue, a four lane road which connects State Highway Route 70 with Route 88, and Salem Street. The subject tract is located in the municipality’s industrial park, in an M-l Industrial Zone. Across New Hampshire Avenue is a residential zone.
Since 1993 the properties have been managed as woodlands pursuant to an approved Forest Management Plan and the management requirements have been met for both lots. Farmland assessment was granted for the 1996 and 1997 tax years. On or about October 14, 1998, the assessor sent a Disallowance of Claim for farmland assessment for the 1998 tax year on the basis that the “use was not permitted in the zone” and/or “insufficient documentation of income.”
*454 It is stipulated that the application was timely filed and there is sufficient acreage under N.J.S.A. 54:4-23.1 to -23.23 for farmland qualification. The parties have also stipulated that if farmland qualification is granted, the assessment for lot 7 is $500 and for lot 8 is $2,200. If denied, the assessment will be $300,000 for lot 7 and $864,500 for lot 8.
There are two issues to be determined by the court: (1) Have taxpayer’s woodland management activities generated sufficient income to enable the properties to qualify under the Farmland Assessment Act? (2) Does the taxpayer’s woodland management activity at the subject properties violate the Township zoning ordinance, and if so, does that preclude the properties from qualifying under the Farmland Assessment Act?
The municipality asserts that the plaintiff, C.P. Lakewood Land, L.P., lacks standing to prosecute its claim for a tax exemption since it is not the owner of the subject properties as required by N.J.S.A. 54:4-23.6. At trial, the Vice President of Real Estate of the Sudler Companies testified that Sudler Lakewood Land, LLC, is the successor in interest to C.P. Lakewood Land, L.P. He explained that C.P. Lakewood Land, L¡P., was the original entity that held all of the vacant land that the Sudler Companies owned in Lakewood. In fact, it was an abbreviation of “Corporate Park Lakewood Land.” According to the corporate officer, in approximately 1996 when many companies were forming LLCs to own property, C.P. Lakewood Land’s assets, which were just vacant property holdings, were merged into Sudler Lakewood Land, LLC. C.P. Lakewood Land, L.P. ceased existence and title to the subject properties was transferred to Sudler Lakewood Land, LLC. The payment made by the tree cutting service on December 15, 1997 for wood removed from the subject tract and subsequently used or sold as firewood was made to Sudler Lakewood Land, LLC, and was reported on its income tax return.
In discovery, the municipality explored the relationship of the two entities, and, in fact, on June 4, 1998, copies of the Sudler Lakewood Land, LLC 1997 tax return were forwarded to the assessor by the corporate officer. The issue of lack of standing *455 was not raised in the municipality’s pretrial memo and was not a part of the pretrial order. As the municipality was aware of the relationship between the two entities substantially prior to trial, the court finds that there is no prejudice to the municipality and, in its sound discretion and in the interests of justice, will amend the complaint and caption to reflect “Sudler Lakewood Land, LLC as successor in interest to C.P. Lakewood Land, L.P.” as party plaintiff. R. 4:9-1. As such, the court finds that the plaintiff does not lack standing to prosecute its claim for farmland assessment.
The approved Forest Management Plan for these parcels requires the harvesting of approximately five cords of oak and some pine each year. According to John Perry, the forester who prepared the Plan, in 1997 approximately six cords of wood were marked for harvest on slightly more than half an acre. According to Michael McCabe, the proprietor of Arbor Tree Experts of Ocean County (“Arbor”), on November 26, 1997 he and his employees cut down approximately 200 trees, constituting about seven to ten cords, on the lots that were marked by the forester for firewood for his own use and/or sale to his customers. On December 15, 1997 Arbor’s office secretary issued a check to the taxpayer in the amount of $660 for purchase of this firewood.
The municipality submits that the property owner has not met the income requirements necessary to qualify for farmland assessment. Pursuant to N.J.S.A. 54:4-23.5, the minimum income requirements for farmland assessment of woodlands are gross sales of agricultural or horticultural px*oducts produced thereon averaging $500 per year during the two year period immediately preceding the tax year in issue, plus an additional average of $ .50 per acre on the area above five acres. Thus, the average yearly income requirement for the subject property was $512.85 for each of the 1996 and 1997 tax years. The trial centered on the 1997 gross sales.
The municipality contends that this payment did not reflect economic reality, but, rather, was merely a facial attempt to meet the statutory income requirements. The municipality points to the facts that since 1993 Arbor performed land clearing services *456 for the taxpayer on its parcels in the industrial park, that in both 1996 and 1997 the taxpayer paid Arbor $3660 for tree cutting services and Arbor paid the taxpayer $660 for purchase of its trees for firewood, and that Mr. McCabe knew of the income threshold for farmland qualification. The municipality relies most heavily on the acknowledgment by Mr. McCabe that without the payment for his clearing services, it would not have been cost effective for him and three to five employees, with equipment, to have undertaken the activity of cutting five to ten cords of firewood for his own use and for sale to his customers. It suggests that the court draw the inference that the taxpayer overpaid Arbor for the job so that the tree cutting service could remit that amount necessary to satisfy the Farmland Assessment Act. According to Mr. McCabe, the tree service is the moneymaker and firewood is a secondary, or by-product, source of income. The fact that the taxpayer paid Arbor to cut down and remove trees from the subject properties in furtherance of its Forest Management Plan does not preclude Arbor from purchasing the taxpayer’s wood for a fair price. Furthermore, nothing in the Act prohibits a taxpayer from deliberately seeking to sell that amount of agricultural or horticultural products produced on the site necessary to satisfy the minimum income requirements of the Farmland Assessment Act. Mr. McCabe testified that $660 was a fair price for the firewood and the . municipality presented no evidence or testimony to the contrary.
According to the credible testimony of Mr. McCabe, selective tree cutting is not an exact science, and although the forester marked an area which he estimated would generate six cords of wood, the amount actually harvested could fluctuate by several cords. According to Mr. McCabe, for several years Arbor cut trees on a number of the taxpayer’s parcels and since the number of trees which it harvested on the subject lots and the amount of wood it purchased from the taxpayer averaged about the same from year to year, it was an easier business practice to establish a set amount for each of the parcels for the cutting service and for the firewood purchase and carry that forward from year to year. Mr. McCabe was emphatic in his testimony that he never had a *457 discussion with the taxpayer discussing higher compensation for his services in return for agreeing to purchase firewood from the taxpayer. In response to a question from the court, Mr. McCabe credibly testified that if a higher income threshold were required to satisfy the requirements of the Act, he would have to cut and remove more wood from the subject properties, so that there would be more wood available for him to purchase from the taxpayer.
The taxpayer has the burden of proof to establish the qualification for farmland assessment. Miele v. Jackson Tp., 11 N.J. Tax 97, 99 (App.Div.1989). The parties stipulated that all of the requirements of N.J.S.A. 54:4-23.6 have been met with the exception of income. There is substantial, credible evidence before the court to warrant a finding that the taxpayer’s sale of its wood to Arbor for firewood generated the required statutory income. As such, the subject properties qualify for farmland assessment for the 1998 tax year.
The municipality contends that even if the properties otherwise qualify under the statute, the parcels are not entitled to farmland assessment because the use thereon violates the zoning ordinance. The M-1 Industrial Zone permits such principal uses as lumber yards, warehouses, manufacturing facilities, and airports. Township of Lakewood Zoning Ordinance § 18:15-1. The ordinance also allows for additional uses, such as corporate headquarters and radio towers, and permitted uses by special permit for facilities of general industrial natures. Id. at § 18:15-2 and -3. Forestry and agriculture is not enumerated as a specific permitted use in the M-l zone, as opposed to the R-20 and R-15 single family residential zones which list as permitted uses “customary and conventional agricultural uses ...” Id. at § 18:12.1a5. Neither is it contained in the long list of prohibited uses in the industrial zone. Id. at § 18-15.5b. Woodland uses are not identified anywhere in the zoning ordinance as a permitted or prohibited use. The zoning ordinance provides, however, that “[A]ll uses in the industrial zone are prohibited other than those uses specified as permitted uses or as may be granted by special permit ....” Id. at § 18-15.5a.
*458 The taxpayer’s position is that the minimal level of agricultural activity taking place at the subject properties does not violate the Township zoning ordinance. The taxpayer presented the testimony of Peter Steck, a licensed planner in the State of New Jersey. Mr. Steck testified that he inspected the tract, had discussions with the taxpayer and the forester regarding the types of activity that occurred there, and reviewed the forestry plan, master plan, and zoning ordinance. It was his opinion that the selective tree harvesting activity does not rise to a level that would be controlled by the Township zoning ordinance. In support of his conclusion, Mr. Steck testified that the type of activity being conducted at the site was tantamount to a maintenance type operation of selective cutting, which is not typically controlled by zoning, as opposed to traditional fanning, with regular activity, cultivation, fertilization, and harvesting of crops, which physically changes the look of the land. The tree harvesting activity is largely invisible from the surrounding perimeter because it is conducted in the interior of the predominantly wooded lots which are accessed by a sand road. Except for the one day a year where a crew of people and vehicles went to the property, cut the taxpayer’s trees, chipped the smaller pieces and trucked out the wood, the woodland management activity at the site does not generate any traffic, noise, pollution, demand on water or sewer services, or any of the other traditional land use impacts normally associated with the regulation of zoning.
Furthermore, Mr. Steck noted that the zoning ordinance does not specifically prohibit agricultural activity in the M-l zone. He testified that it is an accepted zoning principle that there are certain activities permitted by right because of them low impact on land use, such as leasing of rural tracts of land to hunting or fishing clubs, or accessory uses such as a barbeque for a single family house, despite the fact that they are not specifically listed as permitted uses in the zoning ordinance. He classified the subject tree harvesting as an incidental, and minimally impacting, use to the vacant, undeveloped land. Furthermore, according to the municipality’s expert, based on the State policy of encouraging agricultural and woodland uses and the minimum standards for *459 income and activity required by the Farmland Assessment Act, its purpose is different from a zoning ordinance. As such, someone could achieve a farmland assessment and yet have an activity that does not rise to the level of zoning control.
The municipality relies on the language of the ordinance, which permits agricultural uses in some zones (A-l Agricultural, R-20 and R-15 Single Family), does not include them as permitted uses in the M-l zone, and expressly provides that “all uses are prohibited other than those uses specified as permitted uses or as may be granted by special permit.” The municipality contends that quoted phrase constitutes a conscious decision by the governing body not to permit agricultural uses in the industrial zone. The municipality produced as its witness Daniel McSweeny, a State licensed professional planner, who serves as its planner. In his direct testimony he did not address the issue of low level, low intensity uses, but rather he relied solely upon § 18-15.5a of the zoning ordinance which provides the “catchall” language that if a use is not listed as permitted, then it is prohibited. The municipal planner admitted on cross examination that there are certain accessory uses, such as a farm stand in conjunction with a farm or a parking lot with an office building, that while not specifically listed as permitted, would not be prohibited by the zoning ordinance because they are subordinate in nature to the permitted principal use of the property. He further acknowledged that general maintenance of property does not rise to the level of being a “use” of the property.
In support of its position, the taxpayer relies upon the case of Byram Township v. Western World, Inc., 111 N.J. 222, 544 A.2d 37 (1988).[1] In addition to the Byram Township case, the municipality relies upon the cases of Clearview Estates, Inc. v. Mountain Lakes Bor., 188 N.J.Super. 99, 456 A.2d 111 (App.Div.1982) and Cheyenne Corporation v. Township of Byram, 248 N.J.Super. 588, 591 A.2d 991 (App.Div.1991).
*460 In Clearview Estates the court placed upon the taxpayer the burden of proving that agriculture or horticulture was a permitted use and held that land used in violation of a local zoning ordinance, i.e. for logging where forestry operations was not a permitted use, cannot qualify for farmland assessment. At first blush it appears that the Byram Township opinion of our Supreme Court overruled Clearview as interpret by the Appellate Division in Cheyenne. However, Clearview was not overruled except as to the issue of the burden of proof. See Cheyenne, supra at 595-96, 591 A.2d 991. In Byram Township our Supreme Court modified the holding of Clearview to the extent that the burden was placed on the municipality to prove the “ineligibility of the property based on zoning nonconformity.” Id. at 230-31, 544 A.2d 37. In that case the activity on the property consisted of selective cutting pursuant to a woodlands management plan and the cutting of wood for firewood, where farm use was not an explicitly permitted use for the zone. The Court found that the record before the Tax Court was insufficient to establish that the use was prohibited under the zoning ordinance, and thus, the taxpayers were entitled to farmland assessment.
The law is now settled that the legality of the use is not an element which a taxpayer must prove in order to qualify for farmland assessment under the Farmland Assessment Act and that once the taxpayer has met the requirements for farmland assessment, the burden shifts to the municipality to prove illegality of use and its impact on the tax status of the property. See Byram Township v. Western World, Inc., supra at 236, 544 A.2d 37; Cheyenne Corporation v. Township of Byram, supra at 596, 591 A.2d 991. Under the Byram and Cheyenne cases, the municipality can present evidence to the Tax Court which has the jurisdiction to make a determination for local property tax purposes whether there is a violation of the zoning ordinance. Both of the courts recognized that the “absence of any antecedent adjudication of illegality renders the Tax Court’s determination even more problematic” and that “ordinarily zoning violations should be tried in a tribunal other than the Tax Court.” Byram *461 Township, supra at 234-235, 544 A.2d 37; Cheyenne, supra at 596, 591 A.2d 991.
Nevertheless, we are convinced that a violation of the municipality’s zoning ordinance is cognizable in the Tax Court in determining farmland assessment qualifications even in the absence of a separate antecedent action ... Innocent taxpayers should not be required to shoulder an extra financial burden because a municipality has previously defaulted in its obligation to enforce its zoning ordinance.
[Cheyenne, supra at 596-97, 591 A.2d 9911.
In the Byram Township case the Supreme Court recognized that qualification for farmland assessment under the Act does not per se constitute “farming or agricultural use” in violation of a local zoning ordinance which may not permit that use in the zone in which the property is situate. Furthermore, in determining whether the municipality has met its burden, the Tax Court should consider the intensity of the activity. “Both the nature and level of agricultural activity necessary to qualify for farmland assessment and the Township’s zoning ordinance are fact-sensitive matters. It would be improper automatically to equate the statutory term ‘actively devoted to agricultural or horticultural use’ within the meaning of the Farmland Assessment Act with the generic term ‘farming’ as used, expressly or impliedly, in a municipality’s zoning ordinance.” Byram Township, supra at 231, 544 A.2d 37. In discussing whether a certain activity satisfies the conditions of the Farmland Assessment Act, the Supreme Court further stated as follows:
It is thus possible for a relatively low level of ‘agricultural’ activity encompassing things not typically regarded as conventional farming, i.e. managing woodlands, to satisfy the statutory definition. On the other hand, it is not at all obvious that uses that might satisfy the minimal requirements of the Farmland Assessment Act would per se constitute agricultural or farming uses for zoning or other local land use purposes or, conversely, would per se not constitute other kinds of uses, such as residential, recreational, open-space, etc., that might be permitted by the local ordinances or regulations.
[Id. at 232, 544 A.2d 37].
There is sufficient language in the Byram Township case for this court to conclude that even if the zoning ordinance expressly or implicitly prohibited farming activities in a certain zone, it may not be illegal for a relatively low level of agricultural activity encompassing uses not typically regarded as conventional farming to *462 take place therein. These uses may be sufficient to satisfy the “active devotion” requirements of the Act, but so minimal and of such low intensity so as not to rise to the level of being regulated under the local zoning ordinance.
This court is mindful of the established principle that “[T]he Farmland Assessment Act is akin to tax exemption statutes which must be strictly construed against the party claiming the exemption,” Wyer v. Middletown Tp., 16 N.J. Tax 544, 546 (Tax 1997) (citation omitted), since the other taxpayers of the municipality will have to bear the burden of the tax reduction resulting from the farmland qualification. One of the primary goals of the Farmland Assessment Act, however, is to promote open space, the beauty of the countryside, Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J. Tax 570, 582 (Tax 1986), and to slow down the transition of open space to development, which is what this taxpayer accomplishes by its managed woodlands activity.
Based on the facts of this case, the court agrees with the taxpayer’s expert and finds that the minimal level of agricultural activity taking place on the subject woodlands does not violate the municipality’s zoning ordinance. This taxpayer’s activities are far from the commercial logging activities in the Clearview ease, and are more aidin' to those of the taxpayers in the Byram Township case. This taxpayer performed selective tree harvesting, a maintenance type of operation pursuant to an approved Forestry Management Plan, in the interior of the site, invisible to the residential neighborhood across a four lane highway, during only one day a year, with virtually no land use impact. The integrity of the woodlands was preserved in furtherance of the goals of the Farmland Assessment Act with substantially less impact on the municipality in terms of noise, traffic, and the need for municipal services than a conventional farming use or any one of the enumerated industrial uses in the M-l zone.
Furthermore, as in the Byram Township case, the fact that this municipality never took any antecedent action under its zoning laws to declare that the subject site was being used unlawfully or to enjoin its use corroborates this court’s conclusion, by providing *463 some indication that the municipality itself considered the agricultural activity to be of such a low level of intensity so as not to rise to the level that would be controlled by the zoning ordinance. There was apparently no desire on the part of this municipality to stop the activity on the parcels. There was no evidence that during the several years that the activity occurred, a zoning officer issued any cease and desist notices or cited the taxpayer for violation of the zoning ordinance. In fact, the municipality never claimed the taxpayer’s use was in violation of the zoning ordinance in any context other than for farmland assessment pur-poses. It appears that the municipality was generally unconcerned with the nature of the activity, but concerned only with the farmland qualification of the taxpayer for the 1998 tax year, ie. a desire to avoid a farmland assessment resulting in a reduced tax assessment.
As the taxpayer has satisfied all of the requirements of N.J.S.A. 54:4-23.6 and the municipality has failed to satisfy its burden of proving the illegality of the taxpayer’s use, this court will direct the entry of a judgment reversing the determination of the assessor and granting farmland qualification to the subject parcels for the 1998 tax year. As stipulated, the assessment for Lot 7 is $500 and for Lot 8 is $2,200.

 The taxpayer also cites an unreported Tax Court opinion which was provided pursuant to R 1.36-3.