159 N.J. Super. 61 (1978)
386 A.2d 1357
URBAN FARMS, INC., PETITIONER-APPELLANT AND CROSS-RESPONDENT,
v.
TOWNSHIP OF WAYNE, PASSAIC COUNTY, RESPONDENT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1978.
Decided April 21, 1978.
*63 Before Judges ALLCORN, MORGAN and HORN.
Mr. John T. Lynch, attorney for appellant and cross-respondent.
Mr. Robert S. Moraff, attorney for respondent and cross-appellant.
PER CURIAM.
This is an appeal and cross-appeal from judgments in the Division of Tax Appeals (Division) finding certain parcels of the taxpayer's lands entitled to farmland assessment under the Farmland Assessment Act *64 of 1964, N.J.S.A. 54:4-23.1 et seq. (the act). The judge of the Division held that the first group (Lot 26 in Block 602; Lot 5 in Block 603; Lots 6, 6A, 6B, 6C, 6D, 6E, 6F, 7 and 9 in Block 604) was entitled to farmland assessment for the tax years 1972 and 1973, and that the Second Group (Lots 20, 25, 25A, 27, 28, 29 and 30 in Block 602; Lot 2 in Block 604, and Lots 1H and 2F in Block 605) was entitled to farmland assessment for the tax years 1973 and 1974. All the land in question was held to be valued at $720 an acre. The taxpayer appeals from the judgments as to valuation and the township cross-appeals from the whole of the judgments granting farmland assessment.
The property in question comprises approximately 927 acres located in Wayne Township along a mountainous ridge. It is part of a larger tract of forestland totaling some 1,200 acres with additional acreage in North Haledon and Franklin Lakes. All of this land is part of approximately 3,000 acres acquired in 1954 by the taxpayer corporation, which was formed solely to acquire and manage the property. Over the years various farming activities were conducted on the land. In the tax years in question, and the two years immediately preceding them, there were sales of firewood, live trees, evergreens and cider.[1] However, the dominant activity was the dedication of the land to a woodland management program for the commercial production of lumber. In 1971 the taxpayer entered into a ten-year contract with a consulting forester to manage the forestland pursuant to a silviculture program. This is a method which encompasses various types of activity to increase the productivity of woodland. Basically, the woodland is selectively thinned, trees cut and seedlings planted to eventually obtain the ultimate of 100 superior "crop trees" per acre instead of the approximately 300 to 500 trees per acre which might otherwise grow. It takes 50 years for *65 a crop tree to mature from seed, and crop trees are to be periodically cut on a ten-year cutting cycle for a given area.
Without such a silviculture program woodland can be expected to produce approximately $2 an acre in income a year. With such a program productivity can be increased to $20 an acre per year. A report submitted by the forester showed that the property in question contained approximately 104,000 crop trees with a stumpage value of $64,901.20. The estimated annual growth was approximately $4 an acre per year. Pursuant to the plan, 1,000,000 board feet of timber had been recommended for removal and 610,900 board feet had already been cut in 1972, 1973 and 1974, producing $15,500 in income. Seedlings have been planted on the contiguous property and it was planned that in 1976 some would be planted on the Wayne property. The woodland has been certified as a "tree farm," managed to assure the continuous production of commercial forest crops by the American Forest Institute.
On appeal the township does not question that the land meets acreage and income requirements (N.J.S.A. 54:4-23.5), but contends that forestland, as here, which is not preexisting woodland appurtenant to a traditional farm, is not entitled to farmland assessment under the act.
Woodland and other acreage having marginal value for agricultural use may be given the preferential tax treatment when it is appurtenant to and reasonably required for the purpose of maintaining the land actually devoted to agricultural use, particularly where it has been part of the farm for a number of years. Bunker Hill Cranberry Co. v. Jackson Tp., 144 N.J. Super. 230, 234 (App. Div. 1976), certif. den. 73 N.J. 59 (1977); Andover Tp. v. Kymer, 140 N.J. Super. 399, 402-404 (App. Div. 1976); N.J.A.C. 18:15-6.2(a) (6). Thus, woodland which is not producing sufficient income from agricultural or horticultural use may in fact qualify for farmland assessment. However, said statute (N.J.S.A. 54:4-23.1 et seq.) is *66 amply clear that woodland by itself may be qualified for the favored tax treatment if it meets all the criteria under the act, including devotion to an agricultural or horticultural use.
N.J.S.A. 54:4-23.3 clearly provides that "[l]and shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including * * * trees and forest products * * *." Therefore, when land is actually and exclusively devoted to such a use, it may qualify for farmland assessment. Cf. East Orange v. Livingston Tp., 102 N.J. Super. 512, 535-537 (Law Div. 1968), aff'd o.b. 54 N.J. 96 (1969). In the instant case the record reveals substantial credible evidence to warrant the finding that the land was devoted to an agricultural use as defined under the act and thereby entitled to farmland assessment, and the Division was satisfied that the present use and intention of the owner as to the land was sufficient to qualify the land under the statute.
The township further contends that if the act is interpreted to include forestland then it is unconstitutional as exceeding the scope and purpose of the enabling constitutional amendment. That amendment states that land which is determined to be "actively devoted to agricultural or horticultural use" and has been for at least two successive years immediately preceding the tax year in issue is entitled to be assessed only at its value for such use, N.J. Const. (1947), Art. VIII, § 1, par. 1. The Legislature has included under the definition of agricultural use the production for sale of "trees and forest products." Its overall definition is a generally accepted one, that agriculture is "the science or art of the production of plants and animals useful to man." Webster's Third New International Dictionary, Unabridged, at 44 (1971). At the public hearing on the proposed constitutional amendment the drafters were made aware by the State's Secretary of Agriculture that a more *67 explicit definition of agriculture would include the production of forest products. Senate Committee on Revision and Amendment of Laws, Public Hearing, "Senate Concurrent Resolution No. 16, etc." 13 to 15 (April 5, 1963).
The primary objective of the constitutional amendment was to save the "family farm" and to provide farmers with some economic relief by permitting farmlands to be taxed upon their value as ongoing farms and not on any other basis. Other significant objectives were to encourage the maintenance and preservation of open space, and the beauty of the countryside. The accompanying statement to the proposed constitutional amendment recommended passage as "being essential to encourage the retention of agriculture as an industry in the State and to preserve agricultural lands in an open space condition." East Orange v. Livingston Tp., supra 102 N.J. Super. at 532-534. See Andover Tp. v. Kymer, supra at 140 N.J. Super. 404; N.J. Turnpike Auth. v. Washington Tp., 137 N.J. Super. 543, 546 (App. Div. 1975), aff'd o.b. 73 N.J. 180 (1977).
Granting farmland assessment to land producing trees and forest products comports with the above objectives. An agricultural use is encouraged, and open space and the beauty of the countryside is preserved. The Legislature has not granted any special tax treatment to forestland per se. Woodlands can have multiple uses, which could include or combine the production of water, wood, recreation, education and the like. However, the act provides that only when the land is actively and exclusively devoted to the agricultural use of commercial production of forest products can it be granted farmland assessments. East Orange v. Livingston Tp., 102 N.J. Super. supra at 537. We are satisfied that the township has failed to meet its burden of overcoming the presumptive constitutionality of the act. Male v. Renda Contracting Co., 64 N.J. 199, 201 (1974), cert. den. 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1975); English v. Newark Housing Auth., 138 N.J. Super. 425, 431 (App. Div. 1976).
*68 The township also contends that the taxpayer's admitted intended use for the property (development for industrial and residential use) must be considered in determining whether farmland assessment be granted. A similar argument was raised and rejected in Andover Tp. v. Kymer, supra. There we held that considering speculative or intended use of the property would contravene the purpose of the statute to tax land devoted to agricultural use only at its value for that use and not its value for a prospective higher use. The problem of landowners minimally farming the land to gain the tax advantage is partially met by the roll-back tax provisions of the act, N.J.S.A. 54:4-23.8, and we can do no more than point out the problem to the Legislature for further study. 140 N.J. Super. at 405-406.
The taxpayer on appeal objects to the valuation of the land at $720 an acre by the Division. The Division judge recognized that there has been a divergence of opinion as to whether land producing trees and forest products, or a "tree farm," should be classified as "cropland harvester" or as "woodland," as defined by the State Farmland Evaluation Advisory Committee (the Committee) in its reports. She then determined to follow the decision in an unreported Appellate Division case which upheld a determination that the taxpayer's contiguous property in the neighboring town be valued as cropland harvested in Soil Group A at $720 an acre, the highest suggested valuation for farmland in the county. We are of the view that she erred in classifying the subject land as "cropland harvested."
The Committee was statutorily created to publish annually a range of values for each of the several classifications of land in agricultural and horticultural use in the various areas of the State, based upon the productive capabilities of such land when put to such use. N.J.S.A. 54:4-23.20. In valuing land for farmland assessment, local assessors are required to consider recommendations. N.J.S.A. 54:4-23.7. The recommendations, however, are designed as guidelines for the assessor and are not inflexible mandates. It remains *69 the assessor's ultimate responsibility to determine the assessed valuation of qualified farmland in accordance with the standards prescribed in the act. Bunker Hill Cranberry Co. v. Jackson Tp., supra 144 N.J. Super. 234-235.
The township in the present case did not present any evidence for valuation of the land for farmland assessment. The taxpayer submitted the Eighth Report of the State Farmland Advisory Committee (October 1971). It also presented evidence that 60% of the land was in Soil Group D and 40% was in Soil Group E, as defined by the Committee. The Eighth Report values cropland harvested in Passaic County (wherein Wayne Township is situated) from $60 to $720 an acre, depending on the soil rating, and woodland from $21 to $33. Before the Division the taxpayer was willing to have the land valued at the highest suggested value for woodland, or $33 an acre.
The Committee divides land-use classes into four groups  cropland harvested, cropland pastured, permanent pasture and woodland. Cropland harvested is defined as "the heart of the farm and represents the highest use of the land in agriculture. All land from which a crop was harvested in the current year falls into this category." Eighth Report at 4. Until 1974 woodland was described as "[m]any farms have woodlots  not always because wood is needed on the farm but because this particular land has a marginal value in agriculture." Ibid. In 1974, without changing the values for woodland, the definition was changed to "land producing trees. Woodlands are found on all soil groups; however, a large portion of this land is not suitable for other agricultural uses due to slope drainage, soil type or rough rocky topography and its best agricultural use is to remain in trees." Eleventh Report of the State Farmland Evaluation Committee at 4 (October 1974).
Ranges in value of farmland are determined for each county by the method of capitalizing the net income from farming according to a return of 10%. Each land-use class is given a productivity rating or multiplier in determining *70 the average value an acre in a given county. Cropland harvested receives a productivity rating of 20 while woodland is rated at one. Eighth Report at 4, 10. The low productivity of woodland was legislatively recognized by the 1973 amendment to N.J.S.A. 54:4-23.5, which increased income requirements for land over five acres by $5 an acre, while woodland is only required to produce an additional $.50 an acre.
From the foregoing it is clear that the suggested values to be considered by the Division in valuing land producing trees and forest products are those for woodland and not those for cropland harvested. These values are based not so much on the type of use as on productivity. Whether trees should be considered crops, or not, is not the determining factor. However, we emphasize that the suggested values are only guidelines, and a particular tract may be valued higher or lower, depending on the particular circumstances and other methods of valuation proffered. Bunker Hill Cranberry Co. v. Jackson Tp., supra at 235. In light of the above, we decline to follow the decision relied on by the Division judge, insofar as it may be inconsistent with our reasoning. We also add that we are not called upon to determine in the instant case whether land used as woodland may have a soil type which, from an economic standpoint, should place the land in a higher tax category.
The valuation of the land in issue at $720 an acre as cropland harvest in Soil Group A was therefore erroneous under the facts hereof. The only applicable suggested valuations submitted were those for woodland. Furthermore, the evidence did not indicate that any of the land was in Soil Group A, and no other evidence or method of valuation was before the Division to support the determination.
The judgments of the Division of Tax Appeals insofar as they provide that the taxpayer's lands are entitled to farmland assessment are affirmed. The judgments insofar as they value the land at $720 an acre are reversed and the matter is remanded to the Division for a further hearing, findings *71 of fact and determination of the value of the land, at which time the parties may introduce additional valuation testimony in accordance with this opinion. Bunker Hill Cranberry Co. v. Jackson Tp., supra at 235-236. We do not retain jurisdiction.
NOTES
[1] From a seven-acre apple orchard.