RIMM, J. T. C.
These local property tax matters are before the court on petitions of taxpayer to the Division of Tax Appeals seeking farmland assessment qualification for the tax year 1976. The original assessments of the three lots involved were as follows:
Block 43, Lot 23
Land $ 47,200
Improvements -0-
Total $ 47,200
Block 24, Lot 13
Land Improvements $ 29,200 -0-
Total $ 29,200
*405 Block 24, Lot 13-3
Land Improvements $ 16,900 -0-
$ 16,900 Total
On appeal to the Monmouth County Board of Taxation each assessment was sustained. The matters are in the Tax Court by virtue of N.J.S.A. 2A:3A — 26 transferring all pending Division of Tax Appeals matters to the court. Plaintiff claims that the subject property is entitled to favored tax treatment under N.J.S.A. 54:4-23.1 et seq. as land devoted to the production for sale of trees and forest products.
Block 43, Lot 23, consists of 27 acres and is located on the south side of Route 539 east of Allentown. Block 24, Lot 13, consisting of 12 acres and Block 24, Lot 13-3 consisting of 7 acres, are located on the north side of Route 539 directly opposite Block 43, Lot 23.
At one time the subject lots were part of a farm known as Barclay Orchard purchased by plaintiff in 1967. The farm then consisted of two lots separated by Route 539. One of the lots was the same as the subject Block 43, Lot 23, consisting of 27 acres. The other lot was Block 24, Lot 13, then consisting of approximately 25 acres. Following purchase by plaintiff, the original Block 24, Lot 13, was subdivided into three lots, all fronting on the north side of Route 539. The middle lot of the three-lot subdivision contained the farmhouse and other buildings of the farm. This lot was sold by plaintiff and is not before the court. As a result of the subdivision and the sale, the other two lots are not contiguous. They are now designated as Block 24, Lot 13, and Block 24, Lot 13-3, and are also the subject of this appeal.
The apple trees, located almost entirely on Block 43, Lot 23, were cut and sold as firewood, and income from the three lots was $610 in 1974 and $1,680 in 1976, all realized from the sale of firewood. There was no evidence of income for the year 1975. In addition, there was income of $600 from the sale of trees in 1980, which trees were planted in 1975.
*406 In 1975 the plaintiff planted 6,000 “Christmas trees” for resale in accordance with a Woodland Management Plan prepared by the Bureau of Forestry, Forest Management Section. According to the plan, the planting operation was divided into three main parts: preparation, planting and maintenance. The preparation recommendations included killing the orchard trees by girdling or injection with a herbicide; maintenance included mowing weeds when needed to reduce weed competition. In addition, the plan notes that “the maintenance phase is as important as the others. Semi-annual checks should be made to determine maintenance needs.”
Although the apple trees were being cut for firewood, the plan of the Bureau of Forestry, dated March 1975, recommended further action be taken with regard to those trees. There was no evidence of such preparation in accordance with the plan. The evidence of maintenance was not credible, and there was no evidence of semi-annual checks.
One of plaintiff’s witnesses was an expert on tree nurseries and evergreen tree farming who testified that he was not acquainted with the property. He had only visited it on the day of trial for about half an hour, having walked in “a hundred— hundred and fifty feet from the road for about 500 feet of parallel footage along the road.” “There had been quite a bit of mortality of much of the original planting.” The trees were “very open” and would not have a market as Christmas trees although there was a landscaping market for the type of open trees he saw. His testimony also indicated that there had been no maintenance of the trees.
A neighboring farmer testified that plaintiff had not trimmed around the trees since they were planted. The neighbor has owned and lived in a farmhouse next to the subject property for the past 18 years. He testified that he traveled by the property approximately ten times a day and has hunted on it. During the past five years he never saw anyone trimming the trees or mowing the area. On November 20,1980, the date plaintiff had pictures taken on the property, which pictures were marked in evidence, he noticed that there had been some mowing of the *407 grounds. No evidence contrary to his testimony was produced. The court finds that following the planting of the trees in 1975, nothing was done until 1980 when there was some mowing in preparation for trial.
In order to meet the income requirements for farmland assessment the taxpayer must show either (1) gross sales which have averaged $500 a year during the two-year period immediately preceding the tax year in issue, or (2) clear evidence of anticipated yearly gross sales amounting to at least $500 within a reasonable time. Plaintiff has not shown the requisite income. The income for 1974 was $610. For 1975 there was no evidence of income. Therefore the taxpayer’s land does not qualify for farmland assessment on the basis of at least $500 of sales a year during the two years immediately preceding the tax year in issue, 1976.
Although there was testimony that $600 worth of trees were sold in 1980, there was no clear evidence of anticipated yearly gross sales within a reasonable time. There was no evidence of a plan to market the trees which would indicate anticipated earnings to satisfy the statutory income requirements. The testimony of the expert only gave the present value of the trees as landscaping trees, not the purpose for which the trees were planted in accordance with plaintiff’s own interpretation of the Bureau of Forestry Plan. He said nothing at all about anticipated yearly gross sales, even though specifically asked three times about such sales by counsel for the plaintiff. The witness only gave a value based on “one out and out sale.” Such testimony was apparently sought to be elicited under N.J.S.A. 54:4-23.5, which provides in part as follows:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when . . . there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time. [Emphasis supplied]
While the total value given by the witness was substantial, the court is unable to determine whether the statutory requirement was met. In addition, the witness was candid in saying that his testimony as to the total number of trees was a “gut” feeling. Findings of facts cannot be based on an expert’s “gut” feelings. *408 The weight to be given to an expert’s opinion depends on the facts and reasoning which are the basis of the opinion. Consequently, “[a]n expert’s opinion may be adopted in whole or in part or completed rejected. Middlesex Cty. v. Clearwater Village, Inc., 163 N.J.Super. 166, 174 [394 A.2d 390] (App.Div.1978) certif. den., 79 N.J. 483 [401 A.2d 239] (1979).” Atlantic City v. Atlantic Cty. Bd., 2 N.J.Tax 30, 43 (Tax Ct.1980).
At the time of trial eight photographs were marked as plaintiff’s exhibits. While some of the trees photographed were substantial in size, the photographs show that the area was overgrown with weeds and other growth, and the trees were “open” as described by the expert because they had not been sheared. The mowing of November 20, 1980, four days before trial, was the only evidence of care given the trees. Fourteen of the photographs marked as defendant’s exhibits depict wild, overgrown areas of the lots, showing that the trees planted by the taxpayer were hardly visible because of the surrounding growth. It is clear from these photographs that nothing was done on the land for five years and that there was no way for plaintiff’s expert to make any meaningful count of the trees planted by the plaintiff.
Even if the sale of $600 worth of trees in 1980 and the expert’s testimony on the total value of the trees were enough to meet the anticipated income requirements, the subject land would still not qualify for farmland assessment because it has not been devoted to agricultural or horticultural purposes in accordance with Urban Farms, Inc. v. Wayne Tp., 159 NJ.Super. 61, 386 A.2d 1357 (App.Div.1978); Andover Tp. v. Kymer, 140 NJ.Super. 399, 356 A.2d 418 (App.Div.1976), and Bloomingdale Indust. Park v. Bloomingdale, 1 N.J.Tax 145 (Tax Ct. 1980).
Our Constitution directs the Legislature to provide for the favorable assessment of farmland but specifically restricts such special treatment to land “not less than 5 acres, which is . .. actively devoted to agricultural or horticultural use.. . . ” N.J. Const. (1947), as amended in 1963, Art. VIII, § I, par. 1(b) (emphasis supplied). The Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., provides that land, consisting of at *409 least five acres, must have been actively devoted to agricultural or horticultural use for at least the two years immediately preceding the tax year in issue. N.J.S.A. 54:4-23.2. Specifically, N.J.S.A. 54:4-23.3 provides: “Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including ... trees and forest products... . ” The requirement that “not less than 5 acres” be “actively devoted” to agricultural production has been strictly construed. Franklin Estates, Inc. v. Edison Tp., 142 N.J.Super. 179, 361 A.2d 53 (App.Div.1976), aff’d per curiam, 73 N.J. 462, 375 A.2d 658 (1977).
In East Orange v. Livingston Tp., 102 N.J.Super. 512, 246 A.2d 178 (Law Div.1968), aff’d per curiam, 54 N.J. 96, 253 A.2d 546 (1969), the court dealt with the meaning of the statutory phrase, “actively devoted to agricultural or horticultural use.” N.J.S.A. 54:4 — 23.2. The court defined the term “devote”:
In brief, the term “devote” must be understood in its usual significance and in a manner which will sensibly effectuate the salient statutory objective of providing tax relief with respect to lands committed to farming.
The verb “devote” denotes variously “1. .. to set apart or dedicate by a solemn act; to consecrate; ... 2. to give up wholly; to addict; to direct the attention of wholly or chiefly.” A synonym is “to set apart” or “to appropriate”. An equivalent verb is “to dedicate.” Webster’s New International Dictionary, 715 (1948 ed), 715. [at 536-537]
The court then determined that “actively devoted” connotes a dominant or principal use. The use must be one which is “devoted, that is, committed, or dedicated, or set apart or appropriated, or given up wholly or chiefly to the production for sale of agricultural products of any kind within the meaning of the Farmland Assessment Act of 1964.” Id. at 537, 246 A.2d 178.
Citing East Orange v. Livingston Tp., supra, the Appellate Division in Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976), defined “actively devoted” to mean devotion to a principal use:
The entire tract subject to this appeal is entitled to assessment as farmland under the statute even though only a portion thereof is actually being farmed as long as it may be said, as here, that (1) the tract basically is in fact dominantly devoted and dedicated to agricultural, and not to some other alien, principal use, and (2) the statutory requirements as to area (five acres or more) and gross sales *410 have been met — i.e., agricultural products produced thereon averaging at least $500 a year during the two-year period immediately preceding the tax year in issue (1970). [at 402, 356 A.2d 418; emphasis supplied]
There is also no dispute that woodlands, in and of themselves, may qualify for farmland assessment treatment as land devoted to agricultural purposes. Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 386 A.2d 1357 (App.Div.1978). Urban Farms involved 1972 and 1973 assessments. Over the years various farming activities were conducted on the land. While in the two years immediately preceding the tax years in question there were sales of firewood, live trees, evergreens and cider from a seven-acre orchard, the dominant activity was the dedication of the land to a woodland management program for the commercial production of lumber. In 1971 the taxpayer entered into a ten-year contract with a forester to manage the land pursuant to a silviculture program by which, in order to increase the woodlands’ productivity, the trees were selectively thinned and cut and seedlings planted to eventually obtain the optimum crop of trees per acre. The testimony and supporting records presented by the taxpayer were technical and complete in detail and included the initial and projected values, the estimated per-acre annual growth, the amount of board feet to be cut in subsequent years and the seedling planting program. The woodland was certified as a tree farm by the American Forestry Institute. The court found substantial credible evidence was presented below to warrant a finding that the land was entitled to a farmland assessment.
To the same effect is Spiotta Bros. v. Mine Hill Tp., 1 N.J.Tax 42 (Tax Ct.1980). Even though the income requirements were met, the court nevertheless considered the activity of the taxpayer to determine if, in fact, the land was actively devoted to an agricultural or a horticultural use as a primary activity. The court said:
I cannot conclude that the activities conducted on the 49.6 acres in 1973 and 1974 were of such nature as to qualify that land for the favored treatment in 1975 under Urban Farms. Although I recognize that the income derived from the sale of firewood satisfied the minimum requirements; that trees were growing and were cut, and that trees qualify as agricultural products, the meager and vague evidence produced does not support a finding that they were produced, as that term is used in the statute, [at 50]
*411 In the present case the taxpayer did nothing on the land between the planting of the trees in 1975 and the mowing of part of one lot on November 20,1980, in obvious preparation for trial, more than five years later. The photographs depict land so overgrown that trees planted by plaintiff which were visible were inaccessible without extensive clearing. In addition, dead and fallen trees were visible in many of the photographs. In effect there was no use to which the land was put. The taxpayer’s forestry plan called for maintenance of the trees, clearly a necessity for the land to qualify for farmland assessment. If the land is not put to any use, it does not qualify for farmland assessment. Jackson Tp. v. Paolin, 3 N.J. Tax 39 (Tax Ct. 1981). The mere planting of trees to be sold at some undetermined future time without requisite care given to the trees to bring them to market is not the production of crops for sale. The fortuitous survival of some of the trees, evident from the taxpayer’s expert’s testimony on unusual mortality among the trees, does not constitute active devotion to agriculture or horticulture. To find otherwise would be to defeat the purpose of the policy of farmland assessment, not to encourage such a policy. In Jackson Tp. v. Hamburger, 2 N.J.Tax 430 (Tax Ct. 1981), the court said:
The primary goal of N.J.Const. (1947) Art. VIII, § 1, par. 1(b), and the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., is to save the family farm and to provide farmers with some economic relief by permitting farmland to be taxed at a lower assessment. Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 67, 386 A.2d 1357 (App.Div.1978). [at 437]
Plaintiff also alleges that since it did not receive notice of disallowance of its application for farmland assessment for 1975 until December 1975, this court should consider that year together with 1976 for which a timely petition had been filed. Plaintiff relies on Franklin Estates v. Edison Tp., 142 N.J.Super. 179, 361 A.2d 53 (App.Div.1976), aff’d per curiam, 73 N.J. 462, 375 A. 2d 658 (1977), in which it was alleged that since the notice of disallowance of farmland assessment was late, farmland assessment must be granted. The court denied the contention. “[A] late notice of disallowance of a claim for farmland valuation does not result in an automatic grant of such status in the *412 absence of evidence that the delay has prejudiced the taxpayer.” Id. 142 N.J.Super. at 185, 361 A.2d 53. In the instant case the taxpayer alleges that it was prejudiced because of late notice. The notice arrived after August 15,1975, the last day an appeal could have been filed. Thus plaintiff argues that it was proper for it to include 1975 with its 1976 appeal before the Tax Court or it would be denied any remedy whatever. This claim is also without merit. By August 15, 1975 plaintiff should have been aware of the fact that farmland assessment qualification had been denied even without any official notice. First, it presumably had already received a final tax bill. Second, it was actively involved in appeals for prior years in which the municipality contended that plaintiff was not entitled to farmland assessment.
The county board’s acceptance of jurisdiction is of no effect. The board exceeded its authority. The jurisdictional bar is absolute and the county board should have declined to entertain plaintiff’s petition for review for 1975. Mayfair Holding Corp. v. North Bergen Tp., 4 N.J.Tax 39 (Tax Ct. 1982).
The Clerk of the Tax Court will enter judgments dismissing each complaint.