CRABTREE, J.T.C.
This is a local property tax case wherein -laintiff seeks review of a judgment of the Sussex County Board of Taxation upholding denial of plaintiff’s application for farmland assessment with respect to tax year 1987. The regular assessment for that year was $214,200, all of which was allocated to land.
The sole issue in this case is whether the subject property was actively devoted to agricultural or horticultural use within the meaning of N.J.S.A. 54:4-23.5; or, more precisely, whether plaintiff’s timber stand improvement program, with no sales until harvesting of the timber in the year 2001, provided clear evidence of anticipated yearly gross sales in a specified amount within a reasonable period of time as required by statute.
*252 The subject of this proceeding is a 33.8-acre tract of woodland, upon which plaintiff, in 1976, embarked upon a comprehensive, long-range timber stand improvement program. Plaintiff was assisted by one William Roe, a consulting forester and qualified expert in forestry management and silviculture. Roe testified at great length at the trial.
The program initiated through Roe encompassed various activities designed to increase the productivity of plaintiff’s woodland. The woodland was selectively thinned, trees cut and the better species were allowed to mature to the end of achieving the optimum of superior crop trees per acre. The process of tree cutting and thinning was likened to weeding the garden so that vegetables or flowers would have room to grow and flourish. Roe’s recommendation, followed by plaintiff, was to await maturity of the better species of trees, such as red and black oaks, black birches and white ashes, before harvesting. The expert’s long-range plan, set in motion in 1976, was to defer harvesting until the year 2001. He estimated annual growth of 200 board feet per acre with a stumpage value on October 1, 1986 of $250 per thousand board feet. The annual increase in value for 33 acres of superior quality crop trees was thus $1,650. He went on to indicate that, between October 1986 and the estimated commencement of harvesting in 2001, the rate of annual increase in board feet would accelerate as the trees are still growing and becoming larger.
The timber stand improvement program included felling and removing approximately 40 trees, mostly of lower quality species such as beeches, red maples and yellow birches. In addition the thinning operation, which was also part of the program, involved removal of enough trees, even some of good quality, to provide a 20-foot interval between trees. The removal of trees took place over a period of years and the evidence discloses sales of cords of wood from the subject property in 1976, 1977, 1983 and 1985. The sales in 1985 amounted to $300; there is no evidence of sales in 1984, 1986 or 1987.
*253 Roe also opined that, in view of the shortage of saw timber, especially high quality red oak, black oak and white oak, the market value of the crop trees on plaintiff’s woodland would continue to rise. At the maturity of the crop trees in 2001 the annual sales of the harvested timber would thus far exceed $515.
The Farmland Assessment Act of 1964, N.J.S.A. 54:4— 23.1 et seq., enacted following an amendment to Art. VIII, § 1, par. 1 of the New Jersey Constitution, provides that land actively devoted to agricultural or horticultural use shall be specially valued and assessed for local property tax purposes. Land devoted to the production for sale of trees and forest products, i.e., woodland, is eligible for farmland assessment. N.J.S.A. 54:4-23.3. It is not necessary that the woodland be appurtenant to a farm. Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 386 A.2d 1357 (App.Div.1978).
Land is deemed to be actively devoted to agricultural or horticultural use when it meets the criteria set forth in N.J.S.A. 54:4-23.5. That statute provides, pertinently:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced thereon together with any payments received under a soil conservation program have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to at least $500.00 within a reasonable period of time.
In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultural or horticultural use when the gross sales of agricultural or horticultural products produced on the area above five acres together with any payments received under a soil conservation program have averaged at least $5.00 per acre during the 2-year period immediately preceding the tax year in issue, or there is clear evidence of anticipated yearly gross sales and such payments amounting to an average of at least $5.00 per year within a reasonable period of time; except in the case of woodland and wetland, where the minimum requirement shall be an average of $0.50 per acre on the area above five acres.
In this case the evidence reveals that no timber sales took place in 1985 and 1986, the two years immediately preceding the tax year. An increase in value in those years does not satisfy the statutory income requirements. L. & Z. Realty Co. *254 v. Ringwood Boro., 6 N.J.Tax 450 (Tax Ct.1984). The focus then is on the alternative requirement of “clear evidence of anticipated yearly gross sales ... within a reasonable period of time.”
Roe testified that optimum benefit will be realized from the timber stand improvement program if the timber is allowed to grow to maturity, at which time, he opined, the anticipated annual gross sales will far exceed the statutory minimum amount. He also testified that cutting and thinning would continue throughout the crop’s maturation period. This means trees are not only removed but, as the evidence shows, they are cut up and sold as fire logs. Given the ongoing nature of the cutting and thinning process as an integral part of the timber stand improvement program, it is reasonable to infer that cutting and thinning would continue beyond the tax year involved and that those cuttings would — or could — be sold as firewood. Yet there is no clear evidence of anticipated sales for the minimum amount required by statute. The only conclusion the court may draw from the foregoing is that the reasonable time contemplated by the statute does not extend as far as the maturity of the crop trees.
Plaintiff’s evidence, although demonstrating the potential for income from the sale of harvested crop trees at maturity 15 to 20 years hence, is not directed toward the likelihood of sales within a reasonable time. The evidence, while indicating that such sales might occur, is insufficient to establish the amount for which cut timber would be sold as firewood. The statute requires clear evidence of anticipated sales in the amount prescribed by the statute. That clear evidence is lacking here. Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273 (Tax Ct.1981), aff’d on this point 4 N.J.Tax 534 (App.Div.1982).
Judgment will be entered affirming the judgment of the Sussex County Board of Taxation.