SMALL, P.J.T.C.
The sole issue for determination in this case is whether five or more acres of Rohallion, a grand estate in Rumson, is actively devoted to horticultural use pursuant to N.J.S.A. 54:4-23.6.
For the years 1999 and 2000, the property at 45 Bellevue Avenue in Rumson, also designated as Block 91, Lots 2, 3, and 4, was assessed as follows:
Lot 2
Land $ 530,400
Improvements 1,208,100
Total $1,738,500
Lot 3
*336 Land only $ 320,000
Lot 4
Land only $ 310,000
Plaintiff sought farmland assessment under N.J.S.A 54:4-23.6. The assessor denied plaintiffs application, and plaintiff took an appeal to the Monmouth County Board of Taxation, which affirmed the assessment. This appeal followed.
N.J.S.A. 54:4-23.4 provides:
Land shall be deemed to be in horticultural use when devoted to the production for sale of fruits of all kinds, including grapes, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products;
N.J.S.A. 54:4-23.5 provides:
Land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced thereon, any payments received under a soil conservation program, fees received for breeding, raising or grazing any livestock, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have averaged at least $500.00 per year during the 2-year period immediately preceding the tax year in issue,____
In addition, where the land is more than five acres in area, it shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of agricultural or horticultural products produced on the area above five acres, any payments received under a soil conservation program, fees received for breeding, raising or grazing any livestock, income imputed to land used for grazing in the amount determined by the State Farmland Evaluation Advisory Committee created pursuant to section 20 of P.L.1964, c. 48 (C. 54:4-23.20), and fees received for boarding, rehabilitating or training any livestock where the land under the boarding, rehabilitating or training facilities is contiguous to land which otherwise qualifies for valuation, assessment and taxation under this act, have averaged at least $5.00 per acre per year during the 2-year period immediately preceding the tax year in issue, ...
N.J.S.A. 54:4-23.6 provides:
Land which is actively devoted to agricultural or horticultural use shall be eligible for valuation, assessment and taxation as herein provided when it meets the following qualifications:
*337 (a) It has been so devoted for at least the two successive years immediately preceding the tax year for which valuation undei* this act is requested;
(b) The area of such land is not less than five acres when measured in accordance with the provisions of section 11 hereof; and
(c) Application by the owner of such land for valuation hereunder is submitted on or before August 1 of the year immediately preceding the tax year to the assessor of the taxing district in which such land is situated on the form prescribed by the Director of the Division of Taxation in the Department of the Treasury;
There is no question that Rohallion is a grand manor house sitting on over eight acares of land. There is also no question that there is an agricultural enterprise of some substance which has several employees, and grosses over $100,000 a year. The only question is: does the enterprise require and make use of five acres or more of the property?
The evidence in the case consisted of a map prepared for plaintiff by Mr. Ronald Post detailing the horticultural and other improvements on the property, Mr. Post’s testimony, the testimony of Dr. Sinopoli, the owner of the subject property, the testimony and an aerial map prepared by the defendant’s expert, and the testimony of the assessor of Rumson.
The subject property is 8.5496 acres. Mr. Post concluded that 7.1 acres (all of the property other than that covered by impervious materials, la, the mansion, swimming pool, pool house, and all steps, sidewalks, and driveways) were devoted to horticultural use. Defendant’s expert concluded that only 2.48 acres were devoted to agricultural use based on drawing circles on the aerial map around specimen trees and defined flower beds.
Mr. Post spent two days in the field, thirty hours drafting his map, and was assisted by Dr. Sinopoli. Defendant’s expert used an aerial photograph which he obtained after his visit to the subject property. He couldn’t remember what date he visited the property. He took notes only after he returned to his car on that visit. Rased on the testimony of defendant’s expert, the assessor of Rumson, and Dr. Sinopoli, I conclude that defendant’s expert spent no more than one hour and perhaps less than one-half hour on the property. Defendant’s expert made a cursory examination and prepared a chart, which shows a total lack of knowledge of the subject property. Accordingly, I completely disregard his analy *338 sis showing only approximately two and one-half acres under cultivation.
I find that the far more accurate and detailed map of the subject property was that prepared by Mr. Post, and I will rely on it, the testimony of Dr. Sinopoli, and the defendant’s photographs for an accurate depiction of the subject property.
Dr. Sinopoli’s testimony amounted to a walk around the property highlighting those areas where flowers were raised and cut, and where tree bark, pine cones, and evergreens were harvested for wreaths, potpourri, decorative holiday wreaths, ropes, and grave covers. It is not necessary to repeat the detailed description of what was planted, and how it was harvested and marketed other than to state that flowers, shrubs, and trees not only supported the landscaped botanic garden, but also were harvested and sold. The key issue is whether certain grassy areas may be included in the five acre minimum in order for the property to meet the farmland assessment’s minimum acreage requirement. If I included only flower beds and trees with their drip area, the area in cultivation would be less than five acres. The testimony of Dr. Sinopoli was that open space was necessary for light and drainage. The roots of some of the large trees run under the grass; the grass is necessary in order to have full sun so the trees could fully leaf out. The grassy areas are necessary for drainage. Plaintiffs counsel argued that a horticultural farm was not a tiptoe through the tulips, one step you are in and one step you are out. Her surveyor expert indicated that everything other than the impermeable areas, the areas covered by roads, improvements, etc., into which water could not run, was part of the farmland and contained seven-plus acres, more than the five acre minimum requirement.
The Defendant’s attorney argued that the property is an estate with lush landscaping and that all of the horticultural activity on the estate supported the estate. In particular, he cites N.J.A.C. 18:15-4.4, which provides in part:
Land on which a farmhouse is located, together with such land area as may be devoted to lawns, flower gardens, shrubs, swimming pools, tennis courts and like purposes related to the use and enjoyment of the farmhouse, are not deemed to be *339 in agricultural or horticultural use and therefor(el are valued, assessed and taxed by the same standards, methods and procedures as other taxable land in the taxing district.
Defendant also cites N.J.A.C. 18:15-3.2(b) which states:
In determining the area of such land, all the land under barns, sheds, seasonal farm markets selling predominantly agricultural products, seasonal agricultural labor housing, silos, cribs, greenhouses and like structures, lakes, dams, ponds, streams, irrigation ditches and like facilities is included, but land under the farmhouse, and such additional land as may be actually used in connection with the farmhouse, including, but not limited to, land used for lawns, flower gardens, shrubs, swimming pools, tennis courts and for like purposes, is excluded in determining the total area.
In the context of a normal farm that raises livestock or crops, the Director’s regulations relating to lawns, flower gardens, and shrubs are correct. However, Rohallion is a horticultural farm, flowers and shrubs are the crops being raised and the lawns are essential for optimal growth of the trees and flowers that are being harvested and sold.
In White v. Bernardsville Bor., 9 N.J. Tax 110 (Tax 1986), aff'd o.b., 9 N.J. Tax 122 (App.Div.1987), this court found that more than five acres of a 5.98 acre parcel was devoted to farming activities. In this case, plaintiff asks me to find that only the impervious surfaces and surfaces covered by structures should be considered as not devoted to horticulture. Based on the testimony at trial, especially that of Dr. Sinopoli, I conclude that the care with which the property has been surveyed and cultivated and the need for water and light to cultivate the mature plantings and trees require that certain areas be left as grass and other plantings. To qualify as a farm, a plot of land need not be exploited in its most efficient or productive manner. See Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 68, 386 A.2d 1357 (App.Div.1978) (noting that the intent of the Farmland Assessment Act was to tax land devoted to agricultural use exclusively at its value for that use and not at its value for an intended or prospective higher use).
The fact that a farm is a gentleman’s (or gentlewoman’s) farm does not disqualify it from farmland assessment. The purpose of the Farmland Assessment Act was to preserve the family farm and maintain open spaces. See Jackson Tp. v. Paolin, 181 N.J.Super. 293, 308, 3 N.J.Tax 39, 54, 437 A.2d 344 (Tax 1981), *340 and Sudler Lakewood Land, LLC v. Lakewood Tp., 18 N.J.Tax 451, 462 (Tax 1999), aff'd, 19 N.J.Tax 305 (N.J.Super.,App.Div.2001). The statute prescribes the intensity of production required, $500 in gross revenue, plus additional revenue for property in excess of five acres. There is no question that Rohallion meets these revenue requirements. The Tax Court explained in White v. Bernardsville Bor., supra, 9 N.J.Tax 110, that “[t]he purpose of the constitutional provision for farmland and its implementing legislation was to benefit landowners who complied with the objective criteria set forth even though that might protect those who would not be considered ‘fanners’ in the traditional sense.” Id. at 121. The Tax Court thereafter cited Centex Homes of New Jersey, Inc. v. Manalapan Tp., 4 N.J.Tax 599 (Tax 1982), which specified that:
[T]he framers of the constitutional amendment realized that it would not prevent speculation and that speculators could benefit from the preferential treatment accorded by the farmland assessment program. The Governor’s Committee made a conscious policy decision that eligibility would be premised solely on the land qualifications. If land was utilized for agricultural or horticultural use, as outlined in the constitutional amendment and the implementing legislation, preferred valuation, assessment and taxation would follow.
[Ibid, (quoting Centex Homes, supra, 4 N.J. Tax at 616).]
There is no question that many of those farms qualifying for assessment under the Farmland Assessment Act are not the principal source of income of them proprietors. The statutory scheme sets bright line tests of gross income and minimum acreage. It is unlikely that the Legislature had in mind a grand estate, such as Rohallion, when it enacted the Farmland Assessment Act. And in fact, the proprietors of Rohallion, until its current owners, never applied for farmland assessment. Nor does it appear that Rohallion was ever farmed as intensely as it is now.
The Farmland Assessment Act provides a subsidy to those who would keep land undeveloped but not to those who let it lie fallow. There is no express main object test in the Farmland Assessment Act. See Urban Farms, Inc. v. Wayne Tp., supra, 159 N.J.Super. at 68, 386 A.2d 1357; Andover Tp. v. Kymer, 140 N.J.Super. 399, 405, 356 A.2d 418 (App.Div.1976). But see East Orange v. Livingston Tp., 102 N.J.Super. 512, 535-37, 246 A.2d 178 (Law Div.1968), aff'd o.b., 54 N.J. 96, 253 A.2d 546 (1969), *341 Green Pond Corp. v. Rockaway Tp., 2 N.J.Tax 273, 287-89 (Tax 1981), aff'd in part and dismissed in part, 4 N.J. Tax. 534 (App.Div.1982), and Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J.Tax 570, 579 (Tax 1986), all indicating in factually distinguishable circumstances that there is a dominant use test. Furthermore, in this case, there was no evidence that any of the 7.1 acres denominated on Mr. Post’s maps was used for anything other than horticultural use and, therefore, no evidence that horticultural use wasn’t the dominant use of those 7.1 acres. Rohallion is not a “farm,” as that term is generally understood. The language of N.J.S.A. 54:4-23.6 provides a subsidy to horticulturists as it does to those who maintain horse farms and sheep farms. There is no requirement that a horticultural farm consist of industrial-size greenhouses and regimented plantings of flowers and nursery stock. I am satisfied that the plaintiff in this case has met her burden of proving that the way in which this farm is configured is appropriate. Just as it is necessary under the regulations to have ponds and dams and other supporting agricultural uses which are not directly involved in other types of farms, 1 find that the acreage at Rohallion not directly haivested does contribute to the quality of the trees and other products from which grafts are taken for propagation or bark and cones used for potpourri and wreaths. See Andover Tp. v. Kymer, supra, 140 N.J.Super, at 403-05, 356 A.2d 418. Dr. Sinopoli did not qualify as an expert, and I did not rely on her opinion regarding how much acreage was devoted to farmland. I relied on her factual descriptions and the common sense that trees, which require sunlight, must be provided with sunlight, and trees, which require drainage, must have drainage. The testimony of Dr. Sinopoli has been at least as comprehensive as the testimony of Mrs. White in White v. Bernardsville. Bor., supra, 9 N.J. Tax 110, who testified in part that grass clippings were used for bedding and compost. Id. at 113—114, 119. In this case the owner’s testimony extended to drainage and sunlight for some of the open areas on which the products were not directly harvested.
Although most of the horticultural exploitation of Rohallion, I am sure, enhances the value and enjoyment of those living in the *342 manor house, the fact of that enjoyment is not sufficient to disqualify the granting of an exemption which has specific statutory requirements (acreage and revenue). If there is a dual purpose to any of the activities at Rohallion, under the above-cited statutes, regulations, and cases, the issue is not whether the owners enjoy what is going on but whether five acres are in cultivation. If a farmer enjoys his fanning activity and that activity enhances the beauty and value of his land, he will not be deprived of the benefits of farmland assessment if his property meets the statutory requirements for farmland assessment.
For all of the above reasons I find that the subject property qualifies for farmland.assessment for 7.1 acres.
The parties will submit calculations under R. 8:9-3 within fourteen days and the court will enter the appropriate order. If the parties cannot agree,, a hearing under R. 8:9-4 will be held.