NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY



KATHI F. FIAMINGO
JUDGE

120 High Street
Mount Holly, NJ 08060
(609) 288-9500 EXT 38303

February 7, 2023

Steven W. Giansanti
390 Jefferson Road
Sewell, N.J. 08080

Via eCourts
Scott D. Burns, Esq.

RE:     Giansanti v. Mantua Township
        Docket No. 009102-2021

Gentlemen:

This letter constitutes the court's opinion after trial in the above-referenced matter challenging the denial of plaintiff's application for farmland assessment of plaintiff's property for tax year 2021. For the reasons stated below, the court affirms the denial of farmland assessment.

## I.     Procedural History and Factual Findings

The court makes the following findings of fact based on the evidence and testimony offered at trial in this matter. The property in question is located at the intersection of Jefferson and Jackson Roads in the Township of Mantua and is designated as Block 276, Lots 23, 23.03 and 23.04 on the official tax map of Mantua Township ("subject property"). The subject property consists of approximately 6.5 acres of land. Several improvements, including two residences, are located on the subject property, however, for the most part the land is unimproved.






*

For the tax year under appeal, plaintiff filed timely applications for farmland assessment, in which he indicated that 5.8 acres of land were either cropland harvested, permanent pasture, or appurtenant woodland or wetland. The Assessor of Gloucester County[1] timely denied the application. Plaintiff timely appealed the denial to the Gloucester County Board of Taxation ("County Board") which affirmed the assessment. Plaintiff appealed the judgments of the County Board to this court. Trial was held on January 31, 2023.[2] Plaintiff, representing himself, testified on his own behalf. The defendant presented the testimony of Tammie Latona, senior assessor for Gloucester County. A number of exhibits were introduced into evidence by both parties, including several photographs of the subject property.

Plaintiff testified that prior to 1999 plaintiff raised chickens on the subject property, but that he was required to discontinue that undertaking due to a noise ordinance. Plaintiff's applications for farmland assessment had been successfully obtained for a number of years, however, on December 18, 2018 plaintiff was notified that the approval for tax year 2019 was issued with a warning that plaintiff was in violation of the statute allowing farmland because, "[land] areas devoted to agricultural/horticultural use is less than 5 acres." The notice indicated that the determination had been made as a result of a site visit. A similar notice was issued December 10, 2019. This notice indicated that the planting area needed to be expanded to meet the minimum requirements. On October 19, 2020 a denial of plaintiff's application for farmland assessment for tax year 2021 was issued, upon which it was again indicated that the area devoted

---

[1] Gloucester County was designated the pilot county to implement a county-wide assessment program pursuant to N.J.S.A. 54:1-88. Pursuant to N.J.S.A. 54:1-89 Gloucester County is considered a "taxing district" for purposes of assessment of property.

[2] Plaintiff provided evidence only as to the denial of the farmland assessment and provided no valuation evidence.

2

to farmland was less than five acres. This notice indicated that plaintiff had been warned on December 18, 2018 and December 10, 2019.

Plaintiff testified that he did not receive the December 10, 2019 warning. He testified that was surprised by the October 2020 denial of his farmland applications because he had planted saplings on the subject property in response to the warning notices which he believed satisfied the deficiencies.

Plaintiff's testimony was at times difficult to follow and lacked certain specifics and credibility. Plaintiff first testified that he personally measured the areas which he claimed satisfied the Act. Plaintiff testified that he measured an area of .4 acres on Lot 23 which he claimed qualified as farmland. He later testified, however, that he did not measure the area, but merely carried forward the information that was pre-printed on the application supplied to him.

With respect to Lots 23.03 and 23.04, plaintiff testified that although he measured the area containing planted crops on Lots 23.03 and 23.04, he did not measure any other area of the lots, but deemed the entire area of both to be farmland qualified with the exclusion of .31 acres he attributed to the residence on Lot 23.04. Plaintiff testified that although approximately 1.75 acres of this property was wet and could not be used for crops, trees or other vegetation, he deemed the area to qualify as "permanent pasture." He further estimated that .25 acres of the lots constituted woodland, which he also included in his determination of qualified farmland. Plaintiff calculated that the subject property contained a total of 3.59 acres of "crop harvested." Although he testified that he measured the area containing the two harvested fields where beans, tomatoes, peppers and other crops were grown, he did not engage in any measuring of any other areas. It was apparent

3

that plaintiff merely included the remaining land area of the lots because Christmas trees, including recently planted saplings, had been planted rather haphazardly throughout the subject property.

Plaintiff testified that for the year in question, he satisfied the income requirements through the purchase of "chestnuts and vegetables" in the amount of $150.00 by his brother, Mike Giansanti, and the purchase of Christmas trees, wreaths and [grave] blankets in the amount of $1,200.00 by his brother, Paul Giansanti. On cross-examination plaintiff testified that with the exception of the sales made to his brothers, plaintiff did not make any other sales during the year in question. In rather rambling testimony, plaintiff testified to the sale of "wheelbarrows of beans" to individuals in prior years and attempts to sell vegetables at unattended road-side stands. Plaintiff testified that the road-side stands were unsuccessful because he had been "ripped off" and that he decided it was "not worth the effort" to continue to sell anything in this manner. It does not appear that plaintiff made any concerted efforts to sell any product to anyone other than family members for a number of years, including the year under appeal. Plaintiff acknowledged that the applications filed reference only Christmas trees and beans as harvested crops and include no mention of chestnuts.

Defendant's witness testified that she was employed as a senior assessor for Gloucester County, specializing in farmland and that she was familiar with the subject property. The witness testified that she had walked the property and tried to "work with" the plaintiff in attempts to have the subject property maintain farmland assessment qualification. Specifically the witness indicated she spoke with plaintiff about obtaining a woodlands management plan, which she believed would be more applicable to the subject property.

The witness testified that the subject property was also viewed from aerial photos which provided for a visual determination of the use to which the subject property was put, as well as

4

allowing for measurements to be made. The witness personally walked the property in March 2021, after the plaintiff's appeal to the County Board, in order to confirm the accuracy of the denial. Her observations at that time indicated that plaintiff's plantings of Christmas tree saplings was very "disorganized," with no attempt to organize the areas in which the saplings were planted or to segregate them according to dates planted. The witness located only four to five actual saleable Christmas trees on the entire subject property and counted 141 saplings, of which at least fifty percent were dead. The saplings were planted haphazardly throughout the property, most of which did not exceed four inches in height.

The witness testified credibly that she spoke with plaintiff and discussed the possibility of widening his planting area to gain qualification and that she did include as much of the area as possible in determining what might qualify for farmland assessment. With respect to Lot 23 the witness testified that of the .8 acres of property in total, .6 was associated with the residence. One area containing approximately .10 acre contained twenty saplings, not all of which were living, and .10 acre constituted wooded area. An aerial photo of the area was consistent with this observation.

On lot 23.03, the witness testified that of the three acres available, she located 68 saplings and an area where crops had been planted. She measured the areas on which the saplings and crops were located, resulting in a total of .42 acres. The balance of the area was wooded. On lot 23.04 she measured .5 acres associated with the residence, .40 acres with crops, including 53 saplings and 2.53 acres of wooded areas including various cars parked throughout.

In total, the witness testified that she measured a total of 1.02 acres of possible crops and 4.73 acres of wet areas and appurtenant woodlands. She testified that it was likely that the subject

5

property could have qualified for woodlands had plaintiff taken steps to obtain a woodlands management plan.

With respect to plaintiff's claim for qualifying pasture, the witness testified that at one time the area might have qualified as pasture, but that it was currently all weeds and mostly under water. Similarly, she testified that the areas where the saplings had been planted were very weedy, mostly lacking irrigation, and were not well maintained. In measuring the planted areas, however, the witness included all areas where crops or saplings had been planted, including two to three feet around the planting areas in her calculations. The witness included all plants/saplings within the measured areas, regardless of their condition. Photographs presented by both parties confirmed the defendant's witness' testimony about the condition of the subject property.

With respect to the prior year's approval and warnings issued, the witness acknowledged that she was not aware of any statute or other requirement allowing for approval with warnings. She was unaware of any obligation to provide any warning notices. She testified that her office employed a warning process in an attempt to allow the taxpayers to rectify any deficiencies and maintain their farmland assessment qualification. She further testified that she had spoken to plaintiff on at least one prior occasion to suggest that he obtain a woodlands management plan in order to qualify the subject property accordingly.

II.     Conclusions of Law

The issue at hand is the qualification of the subject property for assessment as farmland under the Farmland Assessment Act, N.J.S.A. 54:4-23.1 et seq. (the "Act"). Pursuant to the Act,

> [f]or general property tax purposes, the value of land, not less than
> 5 acres in area, which is actively devoted to agricultural or
> horticultural use and which has been so devoted for at least the 2
> successive years immediately preceding the tax year in issue, shall,
> on application of the owner, and approval thereof as hereinafter

6

provided, be that value which such land has for agricultural or horticultural use.

[N.J.S.A. 54:4-23.2.]

For these purposes, land is in agricultural use "when devoted to the production for sale of plants and animals useful to man." N.J.S.A. 54:4-23.3.

The Act,

> must be strictly construed against the party seeking the tax benefits of the Act, because those benefits are generally equivalent to an exemption, and, here, the benefits would be an exemption. Wishnick v. Upper Freehold Twp., 15 N.J. Tax 597, 606 (Tax 1996). Consequently, plaintiff bears the burden of establishing that [the subject property] qualified for exemption from taxation under N.J.S.A. 54:4-23.12(a).
>
> [Van Wingerden v. Lafayette Twp., 18 N.J. Tax 81, 94 (Tax 1999), aff'd, 335 N.J. Super. 560, 763 A.2d 294 (App. Div. 2000).]

Both the duty to demonstrate that the "land is in agricultural or horticultural use and that the land is actively devoted to such use rests with the homeowner." Hovbilt, Inc. v. Howell Twp., 138 N.J. 589, 620 (1994).

Thus it is the plaintiff's burden to demonstrate here that at least five acres of the subject property was actively devoted to agricultural or horticultural use. Plaintiff failed to do so. Although plaintiff first testified that he personally measured the areas he considered as qualifying farmland, he later testified he merely relied on the information already set forth on the pre-printed application and that he simply determined that the entirety of the property qualified because it was either harvested crops, wetlands, or appurtenant woodland.

Plaintiff's testimony regarding the area in which the Christmas trees upon which plaintiff relies for qualification, including the saplings planted after being warned of the deficiency in the acreage needed for qualification, is unpersuasive. Plaintiff's testimony indicated no plan for the

planting of the saplings, or any care provided to the saplings to ensure their success. Indeed, the photographs provided by both parties and plaintiff's own testimony demonstrate that there was no particular plan for where the saplings were planted. No irrigation system was in place and nearly one-half of the new plantings died within a year. "The mere planting of trees to be sold at some undetermined future time without requisite care given to the trees is not the production of crops for sale." Princeton Research Lands, Inc. v. Upper Freehold Twp., 4 N.J. Tax 402, 411 (Tax 1982). Plaintiff provided no testimony, nor any competent evidence, that the planting of the saplings throughout the subject property was intentional as respects their potential for the future. Instead, it was apparent that the only "intention" applied to the planting of the saplings was to attempt to enlarge the area qualifying for farmland assessment.

Plaintiff provided no competent evidence as to the measurement of the areas devoted to agricultural use. Plaintiff's own testimony was that 1.75 acres of the aggregate 5.8 acres available constituted wetlands or woodland areas upon which no agricultural activity took place. Although plaintiff testified that the wetlands areas were drainage and could not be farmed, he still maintained that they qualified as devoted to agricultural. In this regard, plaintiff referred briefly to a portion of a publication apparently issued by the N.J. Department of Agriculture in consultation with the New Jersey Division of Taxation and the New Jersey Forest Service entitled "New Jersey's Farmland Assessment Act, An Informational Guide on Basic Requirements" dated July 2006. However, plaintiff supplied the court with a single page from this document, from which the court was unable to assess the accuracy of plaintiff's assertion that the wetlands and woodlands are areas to be included within the determination of areas actively devoted to agricultural or horticultural

use.[3] Plaintiff provided no other competent evidence that the reference he provided supports his position.

Moreover, it appears that plaintiff's reference is incorrect, at best, if not intentionally misleading. Regulations issued pursuant to the Act, provide in pertinent part,

> (a) "Devoted to agricultural or horticultural use" means:
> . . .
> (2) Land that consists of . . . wetlands . . . that are supportive and subordinate or reasonably required for the purpose of maintaining agricultural or horticultural uses of a tract of land, <u>which tract of land has a minimum area of at least five acres devoted to agricultural or horticultural uses other than to the production for sale of trees and forest products.</u> (emphasis added)
>
> [N.J.A.C. 18:15-6.2.]

---

[3] The page produced by plaintiff was a copy of a portion of two different pages, culled from the entire document and intending to support plaintiff's position. The reference provided to the court states the following:

> The following examples are offered to assist in understanding the criteria to qualify land for preferential reduction in taxes under the Farmland Assessment Act:
>
> . . .
>
> (2) the owner of a 100-acre vegetable farm is completing Form FA-1 to be filed with the municipal tax assessor. 60 acres are planted to corps, the land under the barns, greenhouses and the seasonal labor housing is reported as cropland harvested. The 5 acres maintained as grassland adjacent to a stream is reported as permanent pasture (even though there are no livestock on the farm), and the 30 acres of woodland/wetland is reported as appurtenant woodland. For the land used in connection with the farmhouse the owner reports 1 acre. The remaining 4 acres used as a commercial site to produce mulch and soil products from materials brought onto the farm is reported as land not devoted to an agricultural or horticultural use. The total land area devoted to a horticultural use is 95 acres.

Because plaintiff failed to produce the entire document, the court is unable to determine whether the 100-acre farm being considered there is comparable in any way to the subject property consisting of less than six acres, of which nearly half consists of wetlands.

The plain language of the regulation indicates that wetlands are devoted to agricultural use only when they are utilized in conjunction with another qualifying tract of at least five acres, "other than the production of trees and forest products." Even including the areas of the subject property devoted to trees, the subject property is insufficient in size to permit the inclusion of the wetlands as devoted to agricultural use.

By way of demonstration, plaintiff's applications indicate the following information with respect to the subject property:

| Lot | Total land, in Acres | Actively devoted land, in acres | Land not actively devoted, in acres |
|---|---|---|---|
| 23 | .8 | .4 | .4 |
| 23.03 | 3.0 | 3.0 | 0 |
| 23.04 | 2.7 | 2.4 | .3 |
| | | | |
| TOTALS | 6.5 | 5.8 | .7 |

Plaintiff testified that the total wetlands area was approximately 1.75 acres, all of which he included within the 5.8 acres deemed actively devoted to agricultural uses. Excluding the 1.75 acres of wetlands leaves at best a tract of slightly more than 4 acres. Applying N.J.A.C. 18:15-6.2, the wetlands do not fall within the definition of land devoted to agricultural or horticultural use. As a result, the subject property contains less than five acres devoted to agricultural use and does not qualify.

The court also notes that although plaintiff appears to now claim that the chestnut trees on the subject property should be included within the calculation of property devoted to agricultural use, he provided no clear evidence as to the number of chestnut trees located on the property, their actual location, or the area in which they were located. Moreover, nothing in the application provided in this matter indicates that chestnuts were being relied upon for purposes of qualification. See Hertz v. Bor. of Lincoln Park, 31 N.J. Tax 1, 12, 15 (Tax 2019) (it is incumbent

upon the taxpayer to notify the assessor of differences between the actual use of the property and what is represented in the application). Nonetheless even when the chestnuts are included, the property still falls short of the five-acre minimum if the wetlands are excluded.

The court finds that plaintiff has failed to meet the burden of demonstrating that five acres of the subject property was actively devoted to agricultural or horticultural uses as required by N.J.S.A. 54:4-23.2. Plaintiff's testimony as to the calculations of this area was less than credible and reliable. Further, plaintiff failed to provide competent evidence that the wetlands area admittedly not devoted to agricultural or horticultural use was nonetheless entitled to be included in that calculation.

For all of the foregoing reasons the denial of farmland assessment by the County Board is affirmed. Plaintiff's complaint is dismissed with prejudice.

Very truly yours,

/s/ Kathi F. Fiamingo

Kathi.F. Fiamingo, J.T.C.